# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-01117-SCT

*CHARLES MEANS*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:               06/03/2008
TRIAL JUDGE:                    HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:      FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         CHARLES MEANS (PRO SE)
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: DEIRDRE McCRORY
DISTRICT ATTORNEY:              ANTHONY J. BUCKLEY
NATURE OF THE CASE:             CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                    REVERSED AND REMANDED - 08/26/2010
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Charles Means brought a post-conviction-relief petition to vacate his banishment order and the revocation of the suspension of his sentence for violating it. The trial court summarily dismissed Means's petition, and the Court of Appeals affirmed. We granted Means's petition for certiorari to review the propriety of his banishment. But the record before us does not indicate whether the trial court addressed the requisite banishment

considerations, as enunciated in ***Cobb v. State***, 437 So. 2d 1218 (Miss. 1983), so we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2. On November 1, 2005, as the result of a negotiated plea arrangement, Charles Means pleaded guilty in the Circuit Court of Forrest County to one count of possession of a controlled substance with intent to distribute, in violation of Mississippi Code Section 41-29-139(a). Miss. Code Ann. § 41-29-139(a) (Rev. 2009). He was sentenced to a term of twenty-five years in the custody of the Mississippi Department of Corrections (MDOC). But the trial court suspended Means's entire sentence, provided he comply with several conditions, including that he remain 100 miles away from the Forrest County Courthouse for the entire twenty-five-year period of the suspended sentence. This condition commonly is known as banishment.

¶3. Less than four months later, on February 24, 2006, Means was found in Hattiesburg, Mississippi, within 100 miles of the Forrest County Courthouse. Means admitted to violating the banishment condition, and on March 13, 2006, the trial court revoked the suspension and ordered Means to serve the full twenty-five-year prison sentence. Pursuant to the Uniform Post-Conviction Collateral Relief Act (UPCCRA), Means filed his first motion for post-conviction relief (PCR) on February 7, 2007, alleging that his attorney had misrepresented the sentence he would receive. But Means did not attack the banishment provision, the revocation, or the imposition of the twenty-five-year sentence. The trial court summarily dismissed Means's first PCR motion, and Means did not appeal the dismissal.

¶4. On March 18, 2008, Means filed another PCR motion in the trial court. In this second motion, he sought "to vacate [his] illegal sentence and unauthorized revocation." Means claimed the trial court lacked authority to impose the banishment condition, and he also asserted that the trial court was limited to imposing a five-year term of probation. On June 4, 2008, the trial court summarily dismissed Means's second PCR motion as being procedurally barred under Mississippi Code Section 99-39-21(1) (Rev. 2007), because Means had failed to raise this issue in his first PCR motion. The trial court also found that Means's motion was barred as a successive writ, pursuant to Section 99-39-23(6) (Rev. 2007). Finally, the trial court found that "Means'[s] sentence is legal" and that it was without authority to modify the sentence after he had begun to serve it. Means appealed.

¶5. The Court of Appeals affirmed the trial court's dismissal of Means's second PCR motion. *Means v. State*, 2009 WL 2436712 (Miss. Ct. App. Aug. 11, 2009). The Court of Appeals found, in pertinent part, that: (1) the banishment condition imposed by the trial court complied with *Cobb v. State*, 437 So. 2d 1218 (Miss. 1983), and *McCreary v. State*, 582 So. 2d 425 (Miss. 1991); (2) Means's PCR motion was procedurally barred under Section 99-39-21(1) because Means had made no objection to his sentence at the sentencing hearing; and (3) Means's PCR motion was procedurally barred as a successive writ under Section 99-39-23(6). *Means*, 2009 WL 2436712, at *2-3. Means petitioned this Court for certiorari, which we granted on March 4, 2010.

## STANDARD OF REVIEW

¶6. A trial court's dismissal of a motion for post-conviction relief will not be reversed absent a finding that the trial court's decision was clearly erroneous. *Brown v. State*, 731 So.

3

2d 595, 598 (Miss. 1999). But when issues of law are raised, the proper standard of review is *de novo*. ***Id.***

## DISCUSSION AND ANALYSIS OF LAW

### I.      Means's motion for post-conviction relief

¶7.     The trial court summarily dismissed Means's PCR motion, finding it to be procedurally barred. The Court of Appeals affirmed the dismissal, finding that Means's motion was barred by the waiver bar in Section 99-39-21(1) and by the successive-writ bar in Section 99-39-23(6). ***Means***, 2009 WL 2436712, at *1-3. Means did not object to his banishment at the sentencing hearing, and he did not raise this issue in his first PCR motion. So the present PCR motion should be procedurally barred. Miss. Code Ann. §§ 99-39-21(1), 99-39-23(6) (Rev. 2007); ***Reed v. State***, 536 So. 2d 1336, 1339 (Miss. 1988).

¶8.     But a PCR motion is excepted from the successive-writ bar if "the petitioner *claims* that . . . his probation, parole or *conditional release* has been unlawfully revoked." Miss. Code Ann. § 99-39-23(6) (Rev. 2007) (emphasis added). In his PCR motion, Means asked the trial court "to vacate [his] illegal sentence and unauthorized revocation." He argued that the trial court was not authorized to order the banishment without placing him on probation, that the court was limited to imposing a five-year term of probation, and that his twenty-five-year banishment, without probation, was thus unenforceable. Because of this, Means *claimed* that the court was without judicial authority to revoke his suspended sentence for violating the banishment.

¶9.     Means's sentence was suspended, and he was *released*, upon several *conditions*, including the banishment. So Means's suspended sentence was a *conditional release*, in the

4

parlance of Section 99-39-23(6), and his suspended sentence was revoked for violating the banishment condition. Miss. Code Ann. § 99-39-23(6) (Rev. 2007). We agree with Means that, if the banishment condition was illegal, unauthorized, or otherwise improper, then the revocation of the suspension for violating the banishment was unlawful, and Means's PCR motion should be excepted from the successive-writ bar in Section 99-39-23(6). *Id.*

¶10. Additionally, this Court recently held unequivocally that "errors affecting fundamental constitutional rights **are** excepted from the procedural bars of the UPCCRA." ***Rowland v. State***, __ So. 3d __, No. 2008-CT-00731-SCT (Miss. 2010) (emphasis in original) (citing ***Luckett v. State***, 582 So. 2d 428, 430 (Miss. 1991), holding "[e]rrors affecting fundamental constitutional rights *may* be excepted from procedural bars which would otherwise prohibit their consideration . . . ." but overruling ***Luckett***'s discretionary "may" language). Means argued in his PCR motion that the trial court's imposition of his banishment violated his "constitutional rights to fundamental and procedural due process of law . . . ." Due process of law is a fundamental right guaranteed by both the United States Constitution and the Mississippi Constitution. *See* U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."); Miss. Const. art. 3, § 14 ("No person shall be deprived of life, liberty, or property except by due process of law.").

¶11. Our opinion should not be read to mean that every alleged violation of the Due-Process Clause involves a fundamental constitutional right. Our power to "regulate procedural burdens [is] subject to proscription under the Due Process Clause if it 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" ***Cooper v. Oklahoma***, 517 U.S. 348, 367, 116 S. Ct. 1373, 134 L.

5

Ed. 2d 498 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977)). So if the trial court violated Means's fundamental due-process rights by imposing the banishment, his PCR motion should be excepted from the waiver bar in Section 99-39-21(1).

¶12. But as the Court of Appeals has explained, merely asserting a constitutional-right violation is insufficient to overcome the procedural bars. "There must at least appear to be some basis for the truth of the claim before the [procedural bar] will be waived." *Crosby v. State*, 16 So. 3d 74, 79 (Miss. Ct. App. 2009) (citing *Stovall v. State*, 873 So. 2d 1056, 1058 (Miss. Ct. App. 2004)). So we must review the record surrounding the imposition of Means's banishment to determine whether there is any arguable basis for his claim that his due-process rights were violated by the banishment and that his conditional release was unlawfully revoked for violating the banishment. But before we do so, we must outline the standards for proper banishments.

## II. Banishment in general

¶13. This Court's previous decisions in *Cobb v. State*, 437 So. 2d 1218 (Miss. 1983), and *McCreary v. State*, 582 So. 2d 425 (Miss. 1991), provide the standards for properly banishing a person convicted of a crime. Specifically, *Cobb* requires trial courts to find, on the record, that: (1) the banishment provision bears a reasonable relationship to the purpose of probation; (2) the ends of justice and the best interest of the defendant and the public would be served by the banishment; (3) public policy is not violated and the rehabilitative purpose of probation is not defeated by the banishment; and (4) the defendant's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution are not

6

violated by the imposition of the banishment. *Cobb*, 437 So. 2d at 1220-21. These considerations have come to be known as "the *Cobb* factors."

¶14. We held in *McCreary* that banishments from the entire state violate public policy. Specifically, we explained that "banishment from a large geographical area, especially outside of the State, struggles to serve any rehabilitative purpose, and implicates serious public policy questions against the dumping of convicts on another jurisdiction." *McCreary*, 582 So. 2d at 427-28 (citing *U.S. v. Abushaar*, 761 F.2d 954, 959-60 (3d. Cir. 1985); *Rutherford v. Blankenship*, 468 F. Supp. 1357, 1360-61 (W.D. Va. 1979)). *See also*, *Simoneaux v. State*, 2009 WL 2154485, *10-11 (Miss. Ct. App. July 21, 2009) ("While banishing Simoneaux from Mississippi would perhaps provide a degree of protection to the citizens of our state, we certainly do not want our sister states repaying us for the favor.").

¶15. *Cobb* represents this Court's seminal decision on banishment. The criminal charge in *Cobb* stemmed from an incident in which Cobb's nephew had thrown rocks at Cobb's vehicle as he passed by. *Cobb*, 437 So. 2d at 1220. Instead of notifying his brother (the boy's father) of the incident so that he could properly discipline the child, Cobb, who had a notoriously bad temper, shot the boy. *Id.* Thankfully, the boy recovered. Cobb pleaded guilty to aggravated assault and was sentenced to twelve years' imprisonment. Yet the circuit judge suspended the sentence and put Cobb on probation for five years, provided he leave Stone County and stay 125 miles away from the county. *Id.* at 1219. On direct appeal, Cobb raised several arguments regarding the impropriety of the banishment.

¶16. In addressing Cobb's contentions, this Court first held that the banishment provision bore a reasonable relationship to the purpose of probation. We specifically pointed out that

7

"Mississippi Code Annotated § 47-7-35 (Supp. 1982) provides that courts shall determine the terms and conditions of probation and may order the probationer to '(g) Remain within a specified area[.]'" *Cobb*, 437 So. 2d at 1219 (quoting Miss. Code Ann. § 47-7-35(g) (Supp. 1982)). And we explained that, "[i]nstead of being a matter of right, it is by grace that probation is granted a defendant, and within his sound judicial discretion the trial judge may fix reasonable conditions of . . . probation." *Id.* at 1221 (citing *Owen v. Kelley*, 681 F.2d 1362 (11th Cir. 1982)).

¶17. We also found that the banishment did not violate public policy nor defeat the rehabilitative purpose of probation. *Cobb*, 437 So. 2d at 1220-21. We noted that the judge "recogniz[ed] that Cobb had an uncontrollable temper, [and] related this to the community," explaining that until Cobb learned to control his temper, it was not likely that he could live in harmony with his brother's family. *Id.* at 1220. The judge cautioned that, had the boy died, Cobb likely would have received a life sentence. *Id.* But the judge did not want to punish "a man of [Cobb's] character" so severely. Since Cobb's house was only three-eighths of a mile from his brother's house, the circuit judge thought the best interests of everyone required getting Cobb "away from his brother and family[.]" *Id.* at 1220-21. The circuit judge noted that "compared to what I could have done, I think I have been relatively kind." *Id.* at 1221. We also recognized that "some amount of punitive aspects of probation serve the public interest as well as the probationer's interest." *Id.* at 1221. So we agreed with the circuit judge that "the ends of justice and the best interests of the public as well as the defendant would be served by the [banishment]." *Id.* at 1220.

8

¶18.   Finally, we found that the trial court had not violated Cobb's constitutional rights by imposing the banishment condition.  We noted that:

> Here the record shows that the trial judge carefully and meticulously explained to Cobb his rights which shows that Cobb understood that he could be sentenced to 20 years in the penitentiary upon the indictment to which he pled guilty.  As found by the trial judge, Cobb voluntarily and knowingly pled guilty and specifically acknowledged his guilt.  Then the court deferred sentence, so that the Mississippi Department of Corrections could "conduct an investigation of this defendant" and present a presentence report to the trial court, all of which presumably was done.  The judgment of the court fixing the sentence and conditions here complained of shows that Cobb (while represented by counsel) signed the judgment underneath the following language: "I accept the above probation in accordance with the terms thereof".

*Cobb*, 437 So. 2d at 1221.  We thus found that Cobb's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution had not been violated by imposition of the conditions of his probation, including the banishment.   *Id.*

¶19.   Based on the trial court's on-the-record adjudication of all those factors, this Court held on appeal, in pertinent part, that:

> *Upon the record as made and presented*, we find that the conditions imposed by the sentencing judge were reasonably related to Cobb's circumstances and his intended rehabilitation. *[U]pon these facts*, we are unable to say that removing him from the area was unreasonable or arbitrary . . . or in any sense violated public policy or his authority under the pertinent statutes.

*Cobb*, 437 So. 2d at 1220, 1221 (emphasis added).  Further, in *McCreary*, we explained why Cobb's banishment had been affirmed.  We stated that:

> In *Cobb*, the Court *satisfied itself from the record* that the banishment provision bore a reasonable relationship to the purpose of probation; that the ends of justice and the best interest of the defendant and the public would be served; that public policy was not violated and the rehabilitative purpose of probation was not defeated; and that Cobb's rights under the First, Fifth and Fourteenth Amendments to the United States Constitution were not violated.

9

*McCreary*, 582 So. 2d at 427 (citing *Cobb*, 437 So. 2d at 1219-21) (emphasis added). So this Court affirmed Cobb's banishment because we were *satisfied from the record as made and presented* – which included specific *facts* regarding Cobb's situation, character, and offense – that Cobb's banishment would achieve a rehabilitative purpose, serve the ends of justice, and protect the rights and interests of Cobb and the public. *Cobb*, 437 So. 2d at 1219-21; *McCreary*, 582 So. 2d at 427.

¶20. Our decisions in *Cobb* and *McCreary* do not necessarily place an affirmative duty on the trial judge to articulate the *Cobb* factors on the record. *Cobb* and *McCreary* simply indicate that we will affirm a banishment only if we are *satisfied from the record as made and presented* that the banishment is appropriate, taking the *Cobb* factors into consideration. *Cobb*, 437 So. 2d at 1219-21; *McCreary*, 582 So. 2d at 427. But we cannot be satisfied from the record that the banishment is proper if no record is made or presented that the banishment would achieve the goals outlined by *Cobb* and *McCreary*. So a trial judge who imposes banishment as a condition of probation or a suspended sentence, and wishes to have the banishment affirmed on appeal, will be best served by articulating, on the record, the reasons for and benefits of the banishment under the *Cobb* factors as they relate to the defendant.

¶21. To that end, this Court recently held that "a trial judge's reasons for ordering banishment . . . must be articulated and supported in the record by a factual basis, as required by *Cobb* and *McCreary*." *Mackey v. State*, 37 So. 3d 1161, 1167 (Miss. 2010). *Mackey* thus imposes an affirmative duty on the trial court to articulate, on the record, the *Cobb* factors as they relate to the defendant to support the banishment. The Court of Appeals has recognized this affirmative duty for some time now. Put simply, "[i]n order for banishment

10

to be an appropriate form of punishment[,] an on the record analysis of the **Cobb** factors is required." **Hamm v. State**, 758 So. 2d 1042, 1047 (Miss. Ct. App. 2000) (deriding this "outmoded form of punishment").

¶22.   Today, we reaffirm the duty we announced in **Mackey**, and we provide more significant reasons for our imposition of it.  It is evident from a reading of the **Cobb** decision that banishment is a unique and extraordinary form of punishment and should be seldom and cautiously imposed.  Both **Cobb** and **McCreary** make clear that unreasonable, arbitrary, or unjustified banishment orders will not be upheld.  *See* **Mackey**, 37 So. 3d at 1166-67 ("compelling reasons must be offered to justify allowing a defendant convicted of a serious criminal offense to leave the jurisdiction unsupervised, as opposed to incarceration or keeping the defendant in the jurisdiction of the court, with supervision").  *See also* **K.N.L. v. State**, 803 So. 2d 1245, 1249 (Miss. Ct. App. 2002) (affirming banishment from shopping mall of teenager convicted of shoplifting from store in mall).

¶23.   "Sir William Blackstone says, personal liberty consists in the power of . . . moving one's person to whatsoever place one's own inclination may direct, without imprisonment or restraint, unless by due process of law." **Johnson v. Johnson**, 189 Miss. 561, 580, 198 So. 308 (Miss. 1940) (Ethridge, J., dissenting) (citing *Cooley's Constitutional Limitations*, 8th ed., page 710; 1 *Blackstone's Commentaries* 134).  This right of free movement is at stake when a court seeks to banish a person convicted of a crime, since banishment is a form

11

of punishment which restricts the person's ability to live in and move to certain areas. So a person may be banished only by due process of law.[1]

¶24. The question, then, is "what process is due?" *Nelson v. City of Horn Lake ex. rel. Bd. of Aldermen*, 968 So. 2d 938, 944 (Miss. 2007). Generally, due process requires only notice of the charges and an opportunity to be heard, before guilt of the charges may be found and punishment may be imposed. *See **Hamdi v. Rumsfeld***, 542 U.S. 507, 533, 124 S. Ct. 2633, 2648-49, 159 L. Ed. 2d 578 (2004); *Estate of McCullough v. Yates*, 32 So. 3d 403 (Miss. 2010). But this Court's decisions in *Cobb* and *McCreary* imposed heightened procedural due-process requirements on the trial court's discretion to order banishment as a condition of a suspended sentence or probation. Under *Cobb* and *McCreary*, as explained in *Mackey*, the trial court may not banish a person convicted of a crime without first explaining, on the record, the reasons for and benefits of the banishment under the *Cobb* factors as they relate to the defendant. *See **Willis v. State***, 904 So. 2d 200, 202 (Miss. Ct. App. 2005); *Weaver v. State*, 764 So. 2d 479, 480-81 (Miss. Ct. App. 2000).

## III. Means's banishment

¶25. The only place in the record before us where the trial court appeared to address the *Cobb* factors was in the sentencing order. The order stated, in pertinent part, that:

> IT IS FURTHER ADJUDICATED AND THE COURT SO FINDS that the banishment provision herein bears a reasonable relationship to the purposes of the suspended sentence or probation, that the ends of justice and the best

---

[1] Procedural due process requires that, when the State interferes with a liberty or property interest, the procedures attendant upon that deprivation must be constitutionally sufficient. *See **Esco v. Blackmon***, 692 So. 2d 74, 78 (Miss. 1997) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60, 109 S. Ct. 1904, 1907-08, 104 L. Ed. 2d 506 (1989)).

interest of the public and the Defendant will be served by such banishment during the period of the suspended sentence, that the banishment provision of the suspended sentence does not violate the public policy of the State of Mississippi, that the banishment provision of the suspended sentence herein does not defeat the rehabilitative purpose of the probation and/or suspended sentence, and such provision does not violate the Defendant's rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution.

This is nearly a verbatim recitation of the *Cobb* factors, as incorporated into this Court's opinion in *McCreary*. *See McCreary*, 582 So. 2d at 427. Based on this "adjudication," the Court of Appeals held that "the trial court followed *Cobb*'s instruction," and concluded that "we cannot find that the trial court erred in fashioning this form of punishment as part of Means's sentence." *Means*, 2009 WL 2436712, at *3. We disagree.

¶26. During the sentencing proceedings in *Cobb*, the circuit judge expressly considered the facts and circumstances regarding Cobb's situation, character, and offense, and in light of those facts, how best to achieve his intended rehabilitation, serve the ends of justice, and protect the rights and interests of Cobb and the public. And the decision banishing Cobb from Stone County for five years explained how the banishment addressed those considerations. *Cobb*, 437 So. 2d at 1219-21. Therefore, in fashioning a proper banishment condition, the sentencing judge cannot simply recite the *Cobb* factors and state that they have been complied with. Following *Cobb*'s example, the judge must articulate, on the record, the reasons for and benefits of the banishment. This is because the judge may not restrict the defendant's personal liberty of free movement without following the *due process* which *Cobb*, *McCreary*, and *Mackey* established.

¶27. Here, while the trial judge's order of conviction stated that he had "adjudicated" all the *Cobb* factors in Means's case, the record before us does not support this. The sentencing

13

order did not set forth any specific facts or circumstances regarding Means's situation, character, or offense, or any reasons why the banishment may help to achieve his intended rehabilitation, serve the ends of justice, or protect the rights and interests of Means and the public, under *Cobb* and *McCreary*. Further, although Means designated all pertinent transcripts in his "Designation of Record on Appeal," the record does not include the transcript of the plea and/or sentencing hearing, during which the specific facts and circumstances supporting Means's banishment, if any, would have been addressed. And finally, Means's present PCR motion was dismissed without an evidentiary hearing, during which the reasons and benefits addressed at the sentencing hearing, if any, likely would have been discussed.

¶28. We are simply unable to determine from the record before us whether the sentencing judge examined, on the record, any specific facts or circumstances of Means's case relevant to the *Cobb* factors to support the banishment. So we are not "satisfied from *this* record as made and presented" that Means's banishment was appropriate under *Cobb* and *McCreary*. *Cobb*, 437 So. 2d at 1219-21; *McCreary*, 582 So. 2d at 427. As the appellant, however, Means is responsible for designating the record pursuant to Mississippi Rule of Appellate Procedure 10(b) in a manner sufficient to allow this Court to review his asserted issues. *Cossitt v. Alfa Ins. Corp.*, 726 So. 2d 132, 135 (Miss. 1998). And in the absence of anything in the record to the contrary, such as a transcript, we must presume that the trial court acted properly. *Moawad v. State*, 531 So. 2d 632, 635 (Miss. 1988). *See also Vinson v. Johnson*, 493 So. 2d 947, 949 (Miss. 1986) (citing *Fontaine v. Pickle*, 254 So. 2d 769 (Miss. 1971);

14

***Walker v. Jones County Cmty. Hosp.***, 253 So. 2d 385 (Miss. 1971); ***Harvey v. Dunaway Bros.***, 232 Miss. 89, 98 So. 2d 143 (1957)).

¶29.    But it is the absence *itself* of record support for Means's banishment which requires additional review.  Means's sentence was the result of a negotiated plea agreement.  And we cannot tell from the record before us whether a plea hearing or sentencing hearing was held, and hence, whether a transcript even exists that could shed some light on the justification, if any, for Means's banishment.  This Court only recently imposed an affirmative duty on the trial judge to analyze the ***Cobb*** factors *on the record* before banishing the defendant.  *See* ***Mackey***, 37 So. 2d at 1166-67.  So there may be, in fact, some reasons for and benefits of Means's banishment under ***Cobb*** and ***McCreary***, but they do not appear in the scant PCR record before us.  And since no hearing was held on Means's present PCR motion, the trial court has not had an opportunity, in this PCR proceeding, to pass on the propriety of Means's banishment under ***Cobb*** and ***McCreary***.  That court should be given the opportunity before this Court rules on it.

¶30.    Means's PCR motion should have been excepted from the procedural bars, and the trial court erred in summarily dismissing the motion.  Therefore, we must remand this case to the trial court to review the record as it existed at the time of Means's sentencing to determine if it contains the requisite reasons for and benefits of Means's banishment under ***Cobb*** and ***McCreary***.  If the record as previously made – which may include the transcript of Means's plea and/or sentencing proceedings – reveals that no such reasons exist, or that the sentencing judge did not address the ***Cobb*** considerations as they relate to Means, then Means's banishment violated his due-process rights, and the revocation of the suspension of

15

Means's sentence (for violating the banishment) was unlawful. If, upon review of the record, the trial court reaches this conclusion, the trial court shall vacate the revocation and reinstate the original, suspended sentence with all the conditions except the banishment.

**CONCLUSION**

¶31. Since we cannot determine from the record before us whether the sentencing judge addressed the *Cobb* factors when ordering Means's banishment, we cannot discern whether the banishment comported with the due-process requirements regarding proper banishments, as announced in *Cobb*, *McCreary*, and *Mackey*. Therefore, we reverse the trial court's dismissal of Means's motion for post-conviction relief, as well as the Court of Appeals' affirmance of it, and we remand this case to the Forrest County Circuit Court for further proceedings consistent with this opinion.

¶32. **REVERSED AND REMANDED**.

**CARLSON, P.J., DICKINSON, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR. GRAVES, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON, P.J., DICKINSON, LAMAR, KITCHENS AND CHANDLER, JJ. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE, J.**

**GRAVES, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶33. The majority correctly notes that the U.S. Constitution addresses the deprivation of liberty without due process of law. (Maj. Op. at ¶10). *See* U.S. Const. amends. V, XIV. Hence, the statement in the majority opinion that "the judge may not restrict the defendant's personal liberty of free movement without following the *due process* which *Cobb, McCreary*, and *Mackey* established" is erroneous. (Maj. Op. at ¶26). These cases did not establish a right. They merely recognized one which already existed.

16

**CARLSON, P.J., DICKINSON, LAMAR, KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**

**RANDOLPH, JUSTICE, DISSENTING:**

¶34. "When reviewing a lower court's decision to deny a petition for post conviction relief this Court will not disturb the trial court's factual findings unless they are found to be *clearly erroneous*." **Brown v. State**, 731 So. 2d 595, 598 (Miss. 1999) (citing **Bank of Miss. v. Southern Mem'l Park, Inc.**, 677 So. 2d 186, 191 (Miss. 1996)) (emphasis added). Despite that deferential standard of review, the Majority reverses and remands, relying solely upon Means's petition, while confessing the record before us is incomplete. *See* Maj. Op. at ¶¶ 1, 25, 27-28. In so ruling, the Majority spurns our caselaw and rules, embraces Means's plea without support, and disregards Means's failure to include in the record all relevant evidence.

¶35. All can agree that **Cobb**[2] and **McCreary**[3] mandate that the trial court may not banish a person convicted of a crime unless the record reveals reasons for the banishment. However, **Cobb** did not hold that a formal "on-the-record" finding by the trial court was required. **Cobb** specifically held that we would look to "the record *as made and presented*," to determine if "the conditions imposed by the sentencing judge were reasonably related to [the defendant's] circumstances and his intended rehabilitation." **Cobb**, 437 So. 2d at 1220 (emphasis added). "In **Cobb**, the Court satisfied itself *from the record* that the banishment provision bore a reasonable relationship to the purpose of probation . . . ." **McCreary**, 582 So. 2d at 427 (emphasis added). To insist that **Cobb** and **McCreary** explicitly require an "on

---

[2]*See* **Cobb v. State**, 437 So. 2d 1218 (Miss. 1983).

[3]*See* **McCreary v. State**, 582 So. 2d 425 (Miss. 1991).

17

the record" finding is not only inaccurate, but also misleading. *See* Maj. Op. at ¶¶ 13, 21. To paraphrase the analysis of Justice Oliver Wendell Holmes, the Majority fails "to avoid extraction from the very general language of" *Cobb* and *McCreary* a "delusive exactness." *Louisville & Nashville R.R. Co. v. Barber Asphalt Paving Co.*, 197 U.S. 430, 434, 25 S. Ct. 466, 467, 49 L. Ed. 819 (1905). Moreover, today's Majority equivocates on this point, acknowledging elsewhere that "[o]ur decisions in *Cobb* and *McCreary* do *not* necessarily place an affirmative duty on the trial judge to articulate the *Cobb* factors on the record." Maj. Op. at ¶ 20 (emphasis added). It is only this Court's recent pronouncement in *Mackey v. State*, 37 So. 3d 1161, 1166-67 (Miss. 2010), inaccurately stating that *Cobb* and *McCreary* imposed such a requirement (when a plain reading of either reveals an absence of such) which "imposes an affirmative duty on the trial court to articulate, on the record, the *Cobb* factors . . . ."[4] Maj. Op. at ¶¶ 21, 29. *See Mackey*, 37 So. 3d at 1165 (citing *Weaver v. State*, 764 So. 2d 479, 480-81 (Miss. Ct. App. 2000), for the proposition that *Cobb* and *McCreary* require "on the record" articulation of the *Cobb* factors by the trial court).

¶36.    Returning to what all can agree upon, "[t]he only place in *the record before us* where the trial court . . . address[ed] the *Cobb* factors [was] in the sentencing order." (Maj. Op. at ¶ 25) (emphasis added). But in reversing and remanding, the Majority offers dubitable justification for avoiding our well-settled rules, which place the responsibility squarely upon

---

[4]*Mackey* likewise equivocated, finding that the record itself failed to provide "any scrap of evidence" to support Mackey's banishment. *Mackey*, 37 So. 3d at 1166. I note that this finding was contrary to the evidence otherwise. *See id*. at 1169 (Randolph, J., dissenting).

Means to provide this Court with a sufficient record on appeal to determine if he has been wronged.

¶37. "[I]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, *the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.*" Miss. R. App. P. 10(b)(2) (emphasis added). *See also **Dickey v. State***, 819 So. 2d 1253, 1257 (Miss. 2002) (citing ***Burns v. State***, 729 So. 2d 203, 212 (Miss. 1998)) ("[i]t is the responsibility of the appellant to provide an accurate account of the proceedings in accordance with Rule 10 of the Mississippi Rules of Appellate Procedure."). The Majority acknowledges this rule. *See* Maj. Op. at ¶ 28. In the absence of evidence otherwise:

> "there is a *presumption that the judgment of the trial court is correct* and the *burden is on the Appellant to demonstrate some reversible error* to this Court." ***Acker v. State***, 797 So. 2d 966, 971 (Miss. 2001) (quoting ***Branch v. State***, 347 So. 2d 957, 958 (Miss. 1977)). "We have stated many times that it is the *duty of the appellant to present a record . . . which is sufficient to support his assignments of error.*" ***Acker***, 797 So. 2d at 971 (quoting ***Peterson v. State***, 518 So. 2d 632, 638 (Miss. 1987)) (citations omitted).

***Juarez v. State***, 965 So. 2d 1061, 1065-66 (Miss. 2007) (emphasis added). *See also **Beamon v. State***, 9 So. 3d 376, 379-80 (Miss. 2009). The Majority also acknowledges this principle, *see* Maj. Op. at ¶ 28, which the Court of Appeals correctly followed in concluding from the "Order of Conviction" that "we cannot find . . . the trial court erred in fashioning this form of punishment as part of Means's sentence." ***Means v. State***, ___ So. 3d ___, 2009 WL 2436712 at *3 (Miss. Ct. App. August 11, 2009). After the Majority declares that "Means is responsible for designating the record . . . in a manner sufficient to allow this Court to review his asserted issues[,]" and that "in the absence of anything in the record to the

19

contrary . . . we must presume that the trial court acted properly[;]" the Majority mystically concludes that "the absence *itself*" of that which is required is error.  Maj. Op. at ¶¶ 28, 29.  This conclusion defies the declaration placing responsibility upon Means to provide a recognizable basis for declaring the trial court in error.  If a civil litigant appeals a judgment asserting erroneous evidentiary rulings at trial, but fails to include the trial transcript in the appellate record, the aforementioned "presumption that the judgment of the trial court is correct" prevails.  *Juarez*, 965 So. 2d at 1065-66.  The same presumption controls if a criminal defendant challenges a sentencing order on appeal, but fails to include said order in the appellate record.  So what makes Means's case the exception?  To this critical query, the Majority fails to *articulate* a response.

¶38.    The transcript of the guilty plea hearing and/or sentencing hearing, or perhaps other evidence, would offer "evidence relevant to" the trial court's reasoning in imposing the banishment condition.  Miss. R. App. P. 10(b)(2).  But since Means failed to present such evidence in the appellate record, I submit this Court should honor "the presumption that the judgment of the trial court was correct [and] must prevail."  *Juarez*, 965 So. 2d at 1066.

¶39.    Alternatively, this Court could follow the precedent of ***Miller v. R.B. Wall Oil, Co., Inc.***, 970 So. 2d 127 (Miss. 2007), and order Means "to supplement the record with all documents designated, but not included in the appellate record[,]" permit him time to comply and properly recertify the record under Mississippi Rule of Appellate Procedure 10(b)(5), and then we could "proceed with a review of the case."  *Id*. at 131.  This course would avoid jettisoning our rules and ignoring our precedent in holding the trial court in error for Means's shortcomings.

¶40. Means failed to fulfill a minimal obligation of furnishing to this Court a sufficient record to support his plea. On the record presented,[5] one cannot judiciously conclude that the trial court's denial of Means's second PCR petition was "clearly erroneous." ***Brown***, 731 So. 2d at 598. Thus, a procedural due-process analysis is, minimally premature, if not fully nullified. The procedural bars of Mississippi Code Sections 99-39-21(1) and 99-39-23(6) applied by both the trial court and the Court of Appeals should control the disposition of this case. *See **Means***, 2009 WL 2436712, at *2. Therefore, I respectfully dissent.

**PIERCE, J., JOINS THIS OPINION.**

---

[5]This record includes an "Order of Conviction" that generally addresses each of the ***Cobb*** factors in imposing the banishment condition, *see **Means***, 2009 WL 2436712, at *3, and fails to include the transcript of the guilty plea hearing and/or sentencing hearing, or perhaps other relevant evidence.