Serial: **232917**

**IN THE SUPREME COURT OF MISSISSIPPI**

**No. 2014-M-01337**

*JERRY LEE WARNER*                    **FILED**                    *Petitioner*

*v.*                                           NOV 1 2 2020

*STATE OF MISSISSIPPI*              OFFICE OF THE CLERK         *Respondent*
                                     SUPREME COURT
                                     COURT OF APPEALS

**EN BANC ORDER**

Before the en banc Court is the Application for Leave to Proceed in the Trial Court filed by Jerry Lee Warner.

The Court of Appeals affirmed Warner's armed-robbery conviction and sentence. *Warner v. State*, 678 So. 2d 1030, 1031 (Miss. Ct. App. 1996) (mem.). Since then, he has filed at least six applications. *See* Order, *Warner v. State*, No. 2014-M-01337 (Miss. Oct. 29, 2014); Order, *Warner v. State*, No. 2011-M-00982, *consolidated with* No. 2011-M-00761 (Miss. May 29, 2014); Order, *Warner v. State*, No. 2011-M-00761, *consolidated with* No. 2011-M-00982 (Miss. Jan. 31, 2013); Order, *Warner v. State*, No. 2011-M-00761, *consolidated with* No. 2011-M-00982 (Miss. Mar. 21, 2012); Order, *Warner v. State*, No. 2011-M-00982, *consolidated with* No. 2011-M-00761 (Miss. Oct. 5, 2011); and Order, *Warner v. State*, No. 1999-M-00558 (Miss. Sept. 24, 1999). This application, then, is successive, Miss. Code Ann. § 99-39-27(9) (Rev. 2015), and was filed outside the three-year limitations period. Miss. Code Ann. § 99-39-5(2) (Rev. 2015).

Here, Warner argues that his sentence is illegal and that he was denied due process at sentencing. Claims alleging an illegal sentence and denial of due process at sentencing are recognized exceptions to the procedural bars. *Rowland v. State*, 98 So. 3d 1032, 1036 (Miss. 2012) (citing *Ivy v. State*, 731 So. 2d 601, 603 (Miss. 1999), *overruled on other grounds by Carson v. State*, 212 So. 3d 22 (Miss. 2016)). But to merit waiving the procedural bars, "[t]here must at least appear to be some basis for the truth of the claim . . . ." *Fluker v. State*, 170 So. 3d 471, 475 (Miss. 2015) (internal quotation marks omitted) (quoting *Means v. State*, 43 So. 3d 438, 442 (Miss. 2010)).

After due consideration, we find Warner's claims are insufficient to merit waiving the bars.

We have sanctioned Warner twice before. Order, *Warner v. State*, No. 2011-M-00982, *consolidated with* No. 2011-M-00761 (Miss. May 29, 2014) (sanctioning $250); Order, *Warner v. State*, No. 2011-M-00761, *consolidated with* 2011-M-00982 (Miss. Jan. 31, 2013) (sanctioning $100). He is hereby warned that future filings deemed frivolous may result not only in additional monetary sanctions but also restrictions on filing applications for post-conviction relief (or pleadings in that nature) *in forma pauperis. See e.g.*, En Banc Order, *Dunn v. State*, No. 2016-M-01514, at *2 (Miss. Apr. 11, 2019) (restricting Dunn's *in forma pauperis* status); Order, *Dunn v. State*, No. 2016-M-01514, at *2 (Miss. Nov. 15, 2018) (warning of additional monetary sanctions and *in forma pauperis* restrictions).

IT IS THEREFORE ORDERED Warner's Application for Leave to Proceed in the Trial Court is denied.

SO ORDERED, this the ___9th___ day of November, 2020.

_James D. Maxwell II_
JAMES D. MAXWELL II, JUSTICE
FOR THE COURT


TO DENY WITH SANCTIONS WARNING: RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ.

TO DENY WITHOUT SANCTIONS WARNING: KITCHENS, P.J., AND COLEMAN, J.

TO DISMISS WITHOUT SANCTIONS WARNING: KING, P.J.

KING, P.J., OBJECTS TO THE ORDER IN PART WITH SEPARATE WRITTEN STATEMENT JOINED BY KITCHENS, P.J.

3

# IN THE SUPREME COURT OF MISSISSIPPI

## No. 2014-M-01337

*JERRY LEE WARNER*

*v.*

*STATE OF MISSISSIPPI*

**KING, PRESIDING JUSTICE, OBJECTING TO THE ORDER IN PART WITH SEPARATE WRITTEN STATEMENT:**

¶1. Although Jerry Lee Warner's application for post-conviction relief does not merit relief, I disagree with this Court's warning that future filings deemed frivolous may result in monetary sanctions or restrictions on filing applications for post-conviction collateral relief *in forma pauperis*.

¶2. This Court seems to tire of reading motions that it deems "frivolous" and imposes monetary sanctions on indigent defendants. The Court then bars those defendants, who in all likelihood are unable to pay the imposed sanctions, from future filings. In choosing to prioritize efficiency over justice, this Court forgets the oath that each justice took before assuming office. That oath stated in relevant part, "I . . . solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich . . . ." Miss. Const. art. 6, § 155.

¶3. I disagree with this Court's warning that future filings may result in additional monetary sanctions or restrictions on filing applications for post-conviction collateral relief

4

*in forma pauperis*. The imposition of monetary sanctions upon a criminal defendant proceeding *in forma pauperis* only serves to punish or preclude that defendant from his lawful right to appeal. Black's Law Dictionary defines sanction as "[a] provision that gives force to a legal imperative by either rewarding obedience or *punishing disobedience*." *Sanction*, Black's Law Dictionary (10th ed. 2014) (emphasis added). Instead of punishing the defendant for filing a motion, I believe that this Court should simply deny or dismiss motions that lack merit. As Justice Brennan wisely stated,

> The Court's order purports to be motivated by this litigant's disproportionate consumption of the Court's time and resources. Yet if his filings are truly as repetitious as it appears, it hardly takes much time to identify them as such. I find it difficult to see how the amount of time and resources required to deal properly with McDonald's petitions could be so great as to justify the step we now take. Indeed, the time that has been consumed in the preparation of the present order barring the door to Mr. McDonald far exceeds that which would have been necessary to process his petitions for the next several years at least. I continue to find puzzling the Court's fervor in ensuring that rights granted to the poor are not abused, even when so doing actually increases the drain on our limited resources.

*In re McDonald*, 489 U.S. 180, 186–87, 109 S. Ct. 993, 997, 103 L. Ed. 2d 158 (1989) (Brennan, J., dissenting).

¶4.    The same logic applies to the restriction on filing subsequent applications for post-conviction relief. To cut off an indigent defendant's right to proceed *in forma pauperis* is to cut off his access to the courts. This, in itself, violates a defendant's constitutional rights, for

> Among the rights recognized by the Court as being fundamental are the rights to be free from invidious racial discrimination, to marry, to practice their religion, to communicate with free persons, to have due process in disciplinary proceedings, and to be free from cruel and unusual punishment. As a result of

5

the recognition of these and other rights, the right of access to courts, which is necessary to vindicate all constitutional rights, also became a fundamental right.

Joseph T. Lukens, *The Prison Litigation Reform Act: Three Strikes and You're Out of Court-It May Be Effective, but Is It Constitutional?*, 70 Temp. L. Rev. 471, 474–75 (1997). This Court must not discourage convicted defendants from exercising their right to appeal. *Wisconsin v. Glick*, 782 F.2d 670, 673 (7th Cir. 1986). Novel arguments that might remove a criminal defendant from confinement should not be discouraged by the threat of monetary sanctions and restrictions on filings. *Id.* As United States Supreme Court Justice Thurgood Marshall stated,

> In closing its doors today to another indigent litigant, the Court moves ever closer to the day when it leaves an indigent litigant with a meritorious claim out in the cold. And with each barrier that it places in the way of indigent litigants, and with each instance in which it castigates such litigants for having 'abused the system,' . . . the Court can only reinforce in the hearts and minds of our society's less fortunate members the unsettling message that their pleas are not welcome here.

*In re Demos*, 500 U.S. 16, 19, 111 S. Ct. 1569, 1571, 114 L. Ed. 2d 20 (1991) (Marshall, J., dissenting).

¶5.    Instead of simply denying or dismissing those motions that lack merit, the Court seeks to punish the defendant for the frequency of his motion filing. However, an individual who, even incorrectly, believes that she has been deprived of her freedom should not be expected to sit silently by and wait to be forgotten. "Historically, the convictions with the best chances of being overturned were those that got *repeatedly reviewed on appeal* or those chosen by

legal institutions such as the Innocence Project and the Center on Wrongful Convictions." Emily Barone, *The Wrongly Convicted: Why More Falsely Accused People are Being Exonerated Today Than Ever Before*, Time, http://time.com/wrongly-convicted/ (last visited Oct. 31, 2020) (emphasis added). The Washington Post reports that

> the average time served for the 1,625 exonerated individuals in the registry is more than nine years. Last year, three innocent murder defendants in Cleveland were exonerated 39 years after they were convicted—they spent their entire adult lives in prison—and even they were lucky: We know without doubt that the vast majority of innocent defendants who are convicted of crimes are never identified and cleared.

Samuel R. Gross, Opinion, *The Staggering Number of Wrongful Convictions in America*, Washington Post (July 24, 2015), http://wapo.st/1SGHcyd?tid=ss_mail&utm_term=.4bed8ad6f2cc.

¶6. Rather than imposing sanctions and threatening to restrict access to the courts, I would simply dismiss or deny motions that lack merit. Therefore, although I find no merit in Warner's application for post-conviction relief, I disagree with this Court's warning of future sanctions and restrictions.

**KITCHENS, P.J., JOINS THIS SEPARATE WRITTEN STATEMENT.**

7