Electronic Document     Feb 2 2021 14:16:42     2019-M-01279     Pages: 7

**Serial: 234914**

# IN THE SUPREME COURT OF MISSISSIPPI

## No. 2019-M-01279

*ANTONIO DANIEL WALLACE A/K/A ANTONIO*          *Petitioner*
*WALLACE A/K/A ANTONIO D. WALLACE*

 *v.*

*STATE OF MISSISSIPPI*                 *Respondent*

### EN BANC ORDER

Before the en banc Court are Antonio Daniel Wallace's (1) "Motion Seeking Leave to Proceed to File Post-Conviction Collateral Relief," (2) "Motion to Suspend [Judgment] on Petitioner's Pending Application for Leave to Proceed in the Trial Court for Post[-]Conviction Relief," (3) "Motion to Amend Previously Filed Application for Leave to Proceed in the Trial Court for Post[-]Conviction Relief," and (4) "Motion for Leave to Submit Additional Facts, Arguments and Evidence Regarding Ineffective Assistance of Counsel."

Wallace was convicted of armed robbery, kidnapping, and conspiracy to commit armed robbery. *Wallace v. State*, 160 So. 3d 1184, 1185 (Miss. Ct. App. 2014). He was sentenced to concurrent thirty-four-, thirty-four-, and five-year terms, respectively. *Id.* This Court denied his petition for a writ of certiorari, Order, *Wallace v. State*, No. 2013-CT-01181-SCT (Miss. Apr. 16, 2015), and the mandate issued on May 7, 2015.

Since then, he has filed one application for leave to seek post-conviction relief in the trial court. The Court granted relief in part and denied in part. Order, *Wallace v. State*, No. 2019-M-01279 (Miss. Dec. 12, 2019).

Here, Wallace again requests leave to seek post-conviction relief in the trial court. He also moves to amend and to supplement his motion. Prior to filing his motion to amend, he had asked the Court to suspend ruling on his request for leave to seek post-

conviction relief until he filed the motion to amend.

After due consideration, we find that the motions to amend and to supplement should be granted. And because he has now filed his motion to amend, we find that his motion to suspend ruling on his request for leave to seek post-conviction relief should be dismissed as moot.

Turning to the pleadings' merits, Wallace raises three issues.

First, he argues that he is actually innocent. Even assuming that actual innocence is an exception to the procedural bars, we find that Wallace's claim is insufficient to merit waiving them. *See Means v. State*, 43 So. 3d 438, 442 (Miss. 2010).

Second, Wallace asserts newly discovered evidence. To merit waiving the procedural bars, "[t]he new evidence must be 'evidence, not reasonably discoverable at the time of trial, that is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence.'" *Havard v. State*, 86 So. 3d 896, 906 (Miss. 2012) (quoting Miss. Code Ann. § 99-39-27(9) (Rev. 2007)). We find that Wallace's claim does not meet that standard.

Finally, Wallace argues that counsel was ineffective in several respects. In exceptional circumstances, an ineffective-assistance claim might be excepted from the procedural bars. *Chapman v. State*, 167 So. 3d 1170, 1174–75 (Miss. 2015); *Bevill v. State*, 669 So. 2d 14, 17 (Miss. 1996); *Brown v. State*, 187 So. 3d at 667, 671 (Miss. Ct. App. 2016). Yet we find that Wallace's claim is insufficient to merit waiving them. *See Means*, 43 So. 3d at 442.

After due consideration, we find that Wallace's request for leave to seek post-conviction relief in the trial court should be denied. Further, Wallace is hereby warned that any future filings deemed frivolous may result not only in monetary sanctions, but also in restrictions on filing applications for post-conviction collateral relief (or pleadings in that nature) *in forma pauperis*. *See* Order, *Dunn v. State*, No. 2016-M-01514, at *2 (Miss. Nov. 15, 2018) (warning of sanctions); *see also* En Banc Order, *Dunn v. State*,

2

No. 2016-M-01514, at *2 (Miss. Apr. 11, 2019) (restricting Dunn's *in forma pauperis* status).

IT IS THEREFORE ORDERED that Wallace's "Motion Seeking Leave to Proceed to File Post-Conviction Collateral Relief"is denied.

IT IS FURTHER ORDERED that his "Motion to Amend Previously Filed Application for Leave to Proceed in the Trial Court for Post[-]Conviction Relief" and his "Motion for Leave to Submit Additional Facts, Arguments and Evidence Regarding Ineffective Assistance of Counsel" are granted.

IT IS FURTHER ORDERED that his "Motion to Suspend [Judgment] on Petitioner's Pending Application for Leave to Proceed in the Trial Court for Post[-]Conviction Relief" is dismissed as moot.

SO ORDERED.

TO DENY WITH SANCTIONS WARNING: RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ.

TO DENY: KITCHENS AND KING, P.JJ.

KING, P.J., OBJECTS TO THE ORDER IN PART WITH SEPARATE WRITTEN STATEMENT JOINED BY KITCHENS, P.J.

**DIGITAL SIGNATURE**
**Order#:** 234914
**Sig Serial:** 100003194
**Org:** SC
**Date:** 02/02/2021

Josiah Dennis Coleman, Justice

3

*ANTONIO DANIEL WALLACE A/K/A*
*ANTONIO WALLACE A/K/A ANTONIO*
*D. WALLACE*

*v.*

*STATE OF MISSISSIPPI*

**KING, PRESIDING JUSTICE, OBJECTING TO THE ORDER IN PART WITH SEPARATE WRITTEN STATEMENT:**

¶1.     Although Antonio Daniel Wallace's application for post-conviction relief does not merit relief, I disagree with this Court's warning that future filings deemed frivolous may result in monetary sanctions or restrictions on filing applications for post-conviction collateral relief *in forma pauperis*.

¶2.     This Court seems to tire of reading motions that it deems "frivolous" and imposes monetary sanctions on indigent defendants. The Court then bars those defendants, who in all likelihood are unable to pay the imposed sanctions, from future filings. In choosing to prioritize efficiency over justice, this Court forgets the oath that each justice took before assuming office. That oath stated in relevant part, "I . . . solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich . . . ." Miss. Const. art. 6, § 155.

¶3.     I disagree with this Court's warning that future filings may result in additional monetary sanctions or restrictions on filing applications for post-conviction collateral relief

*in forma pauperis*. The imposition of monetary sanctions upon a criminal defendant proceeding *in forma pauperis* only serves to punish or preclude that defendant from his lawful right to appeal. Black's Law Dictionary defines sanction as "[a] provision that gives force to a legal imperative by either rewarding obedience or *punishing disobedience*." *Sanction*, Black's Law Dictionary (10th ed. 2014) (emphasis added). Instead of punishing the defendant for filing a motion, I believe that this Court should simply deny or dismiss motions that lack merit. As Justice Brennan wisely stated,

> The Court's order purports to be motivated by this litigant's disproportionate consumption of the Court's time and resources. Yet if his filings are truly as repetitious as it appears, it hardly takes much time to identify them as such. I find it difficult to see how the amount of time and resources required to deal properly with McDonald's petitions could be so great as to justify the step we now take. Indeed, the time that has been consumed in the preparation of the present order barring the door to Mr. McDonald far exceeds that which would have been necessary to process his petitions for the next several years at least. I continue to find puzzling the Court's fervor in ensuring that rights granted to the poor are not abused, even when so doing actually increases the drain on our limited resources.

*In re McDonald*, 489 U.S. 180, 186–87, 109 S. Ct. 993, 997, 103 L. Ed. 2d 158 (1989) (Brennan, J., dissenting).

¶4.    The same logic applies to the restriction on filing subsequent applications for post-conviction relief. To cut off an indigent defendant's right to proceed *in forma pauperis* is to cut off his access to the courts. This, in itself, violates a defendant's constitutional rights, for

> Among the rights recognized by the Court as being fundamental are the rights to be free from invidious racial discrimination, to marry, to practice their religion, to communicate with free persons, to have due process in disciplinary proceedings, and to be free from cruel and unusual punishment. As a result of the recognition of these and other rights, the right of access to courts, which

2

is necessary to vindicate all constitutional rights, also became a fundamental right.

Joseph T. Lukens, *The Prison Litigation Reform Act: Three Strikes and You're Out of Court-It May Be Effective, but Is It Constitutional?*, 70 Temp. L. Rev. 471, 474–75 (1997). This Court must not discourage convicted defendants from exercising their right to appeal. ***Wisconsin v. Glick***, 782 F.2d 670, 673 (7th Cir. 1986). Novel arguments that might remove a criminal defendant from confinement should not be discouraged by the threat of monetary sanctions and restrictions on filings. ***Id.*** As United States Supreme Court Justice Thurgood Marshall stated,

> In closing its doors today to another indigent litigant, the Court moves ever closer to the day when it leaves an indigent litigant with a meritorious claim out in the cold. And with each barrier that it places in the way of indigent litigants, and with each instance in which it castigates such litigants for having 'abused the system,' . . . the Court can only reinforce in the hearts and minds of our society's less fortunate members the unsettling message that their pleas are not welcome here.

***In re Demos***, 500 U.S. 16, 19, 111 S. Ct. 1569, 1571, 114 L. Ed. 2d 20 (1991) (Marshall, J., dissenting).

¶5.     Instead of simply denying or dismissing those motions that lack merit, the Court seeks to punish the defendant for the frequency of his motion filing. However, an individual who, even incorrectly, believes that she has been deprived of her freedom should not be expected to sit silently by and wait to be forgotten. "Historically, the convictions with the best chances of being overturned were those that got *repeatedly reviewed on appeal* or those chosen by legal institutions such as the Innocence Project and the Center on Wrongful Convictions." Emily Barone, *The Wrongly Convicted: Why More Falsely Accused People are Being*

*Exonerated Today Than Ever Before*, Time, http://time.com/wrongly-convicted/ (emphasis added) (last visited Oct. 31, 2020). The Washington Post reports that

> the average time served for the 1,625 exonerated individuals in the registry is more than nine years. Last year, three innocent murder defendants in Cleveland were exonerated 39 years after they were convicted—they spent their entire adult lives in prison—and even they were lucky: We know without doubt that the vast majority of innocent defendants who are convicted of crimes are never identified and cleared.

Samuel R. Gross, Opinion, *The Staggering Number of Wrongful Convictions in America*, Washington Post (July 24, 2015), http://wapo.st/1SGHcyd?tid=ss_mail&utm_term=.4bed8ad6f2cc.

¶6. Rather than imposing sanctions and threatening to restrict access to the courts, I would simply dismiss or deny motions that lack merit. Therefore, although I find no merit in Wallace's application for post-conviction relief, I disagree with this Court's warning of future sanctions and restrictions.

**KITCHENS, P.J., JOINS THIS SEPARATE WRITTEN STATEMENT.**