Electronic Document          Sep 2 2025 10:03:07          2010-M-01801          Pages: 7

**Serial: 258495**

**IN THE SUPREME COURT OF MISSISSIPPI**

**No. 2010-M-01801**

*JARVIS SHELTON*                                                                    *Petitioner*

*v.*

*STATE OF MISSISSIPPI*                                                          *Respondent*

**EN BANC ORDER**

Before the en banc Court are Jarvis Shelton's "Petition for the Justices to Review the Issues Submitted for Possible Judicial and-or Criminal Misconduct Committed by a Sitting Judge for Possible Impeachment and-or Prosecution and for an Order Directing that Petitioner be Brought Before the Justices (or other Lawfully-Empaneled Tribunal Committee) to Present 'Newly' Discovered Evidence and Additional Testimony that will Further Corroborate the Issues Presented" and his "Supplemental 'Revised' Issues of Impeachment and-or Criminal Prosecution with Supporting Exhibits Submitted Under Separate Cover."

With Judge Larry E. Roberts presiding, Shelton was convicted of rape, armed robbery, and aggravated assault. *Shelton v. State (Shelton I)*, 728 So. 2d 105, 105, 108 (Miss. Ct. App. 1998). The Court of Appeals reversed and rendered the armed-robbery conviction, but it affirmed the rape and aggravated-assault convictions and sentences. *Id.* at 108. The mandate issued on April 12, 1999.

Then, with Judge Jannie M. Lewis presiding, Shelton was convicted of capital murder and sentenced to life in prison. *Shelton v. State (Shelton II)*, 853 So. 2d 1171, 1173 (Miss. 2003). This Court affirmed. *Id.* at 1187. And the mandate issued on October 2, 2003.

In April 2025, Shelton filed a motion accusing Judges Roberts and Lewis of

misconduct, including criminal acts. Order, *Shelton v. State*, No. 2010-M-01801, at *1 (Miss. May 30, 2025). He sought a hearing so that he could present newly discovered evidence showing that they should be impeached, prosecuted, or both. *Id.* at **1-2. The Court treated the motion partly as a successive post-conviction application and denied relief. *Id.* at **2-3. It also warned Shelton that future frivolous filings may result in *in forma pauperis* restrictions. *Id.* at *3 (quoting Order, *Dunn v. State*, No. 2016-M-01514, at *2 (Miss. Nov. 15, 2018)).

Here, Shelton again accuses Judges Roberts and Lewis of misconduct and claims that their acts and omissions render his convictions and sentences unlawful. He asserts newly discovered evidence and requests a hearing.

After due consideration, we find that the petition is cognizable under the Mississippi Uniform Post-Conviction Collateral Relief Act and should be treated as a post-conviction application. *See Knox v. State*, 75 So. 3d 1030, 1035 (Miss. 2011) (citing *Edmond v. Miss. Dep't of Corr.*, 783 So. 2d 675, 677 (Miss. 2001)). As such, we find that the claims are time barred, waived, and successive. *See* Miss. Code Ann. §§ 99-39-5(2), -21(1), -27(9) (Rev. 2020). The newly-discovered-evidence exception is unmet. *See* Miss. Code Ann. §§ 99-39-5(2)(a)(i), -27(9) (Rev. 2020). Nor is any other statutory exception met. *See Howell v. State*, 358 So. 3d 613, 615-16 (Miss. 2023). And even if an exception were met, the claims have no arguable basis. *See Means v. State*, 43 So. 3d 438, 442 (Miss. 2010).

Shelton has filed at least seven prior post-conviction applications. *See* Order, *Shelton v. State*, No. 2010-M-01801, at *2 (Miss. May 30, 2025). We find that this filing is frivolous and that sanctions are merited.

IT IS THEREFORE ORDERED that the petition is denied.

IT IS FURTHER ORDERED that Shelton is hereby restricted from filing further applications for post-conviction collateral relief (or pleadings in that nature) that are related to the subject convictions and sentences *in forma pauperis*. The Clerk of the Court

shall not accept for filing any further applications for post-conviction collateral relief (or pleadings in that nature) from Shelton that are related to the subject convictions and sentences unless he pays the applicable docket fee.

SO ORDERED.

TO DENY WITH SANCTIONS: RANDOLPH, C.J., MAXWELL, CHAMBERLIN, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ.

TO DENY WITHOUT SANCTIONS: KING AND COLEMAN, P.JJ.

KING, P.J., OBJECTS TO THE ORDER WITH SEPARATE WRITTEN STATEMENT.

**DIGITAL SIGNATURE**
**Order#:** 258495
**Sig Serial:** 100010991
**Org:** SC
**Date:** 09/02/2025

T. Kenneth Griffis, Justice

3

**Jarvis Shelton**

**v.**

**State of Mississippi**

**KING, PRESIDING JUSTICE, OBJECTING TO THE ORDER WITH SEPARATE WRITTEN STATEMENT:**

¶1.     Today, this Court prioritizes efficiency over justice and bars Jarvis Shelton from its doors. Because the imposition of monetary sanctions against indigent defendants and the restriction of access to the court system serve only to punish those defendants and to violate rights guaranteed by the United States and Mississippi Constitutions, I strongly oppose this Court's order restricting Shelton from filing further petitions for post-conviction collateral relief *in forma pauperis*.

¶2.     This Court seems to tire of reading motions that it deems "frivolous" and imposes monetary sanctions on indigent defendants. The Court then bars those defendants, who in all likelihood are unable to pay the imposed sanctions, from future filings. In choosing to prioritize efficiency over justice, this Court forgets the oath that each justice took before assuming office. That oath stated in relevant part, "I . . . solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich . . . ." Miss. Const. art. 6, § 155. Yet this Court deems the frequency of Shelton's filings to be too onerous a burden and decides to restrict Shelton from filing subsequent applications

for post-conviction collateral relief. *See **In re McDonald***, 489 U.S. 180, 186–87, 109 S. Ct. 993, 997, 103 L. Ed. 2d 158 (1989) (Brennan, J., dissenting) ("I continue to find puzzling the Court's fervor in ensuring that rights granted to the poor are not abused, even when so doing actually increases the drain on our limited resources.").

¶3.     Article 3, section 25, of the Mississippi Constitution provides that "*no person* shall be debarred from prosecuting or defending *any civil cause for or against him or herself*, before any tribunal in the state, by him or herself, or counsel, or both." Miss. Const. art. 3, § 25 (emphasis added). Mississippi Code Section 99-39-7 provides that actions under the Uniform Post-Conviction Collateral Relief Act *are civil actions*. Miss. Code Ann. § 99-39-7 (Rev. 2020). Therefore, this State's Constitution grants unfettered access in civil causes to any tribunal in the State. The Court's decision to deny Shelton's filing actions *in forma pauperis* is a violation of his State constitutional right to access to the courts.

¶4.     The decision to cut off an indigent defendant's right to proceed *in forma pauperis* is also a violation of that defendant's fundamental right to vindicate his constitutional rights, for

> Among the rights recognized by the Court as being fundamental are the rights to be free from invidious racial discrimination, to marry, to practice their religion, to communicate with free persons, to have due process in disciplinary proceedings, and to be free from cruel and unusual punishment. As a result of the recognition of these and other rights, the right of access to courts, which is necessary to vindicate all constitutional rights, also became a fundamental right.

Joseph T. Lukens, *The Prison Litigation Reform Act: Three Strikes and You're Out of Court-It May Be Effective, but Is It Constitutional?*, 70 Temp. L. Rev. 471, 474–75 (1997). As United States Supreme Court Justice Thurgood Marshall stated,

> In closing its doors today to another indigent litigant, the Court moves ever closer to the day when it leaves an indigent litigant with a meritorious claim out in the cold. And with each barrier that it places in the way of indigent litigants, and with each instance in which it castigates such litigants for having "abused the system," . . . the Court can only reinforce in the hearts and minds of our society's less fortunate members the unsettling message that their pleas are not welcome here.

*In re Demos*, 500 U.S. 16, 19, 111 S. Ct. 1569, 1571, 114 L. Ed. 2d 20 (1991) (Marshall, J., dissenting). Instead of simply denying or dismissing those motions that lack merit, the Court seeks to punish Shelton for arguing his claims.

¶5.     Although each justice took an oath to do equal right to the poor and rich, this Court does not deny access to the court defendants who are fortunate enough to have monetary resources. Those defendants may file endless petitions, while indigent defendants are forced to sit silently by. An individual who, even incorrectly, believes that she has been deprived of her freedom should not be expected to sit silently by and wait to be forgotten. "Historically, the convictions with the best chances of being overturned were those that got *repeatedly reviewed on appeal* or those chosen by legal institutions such as the Innocence Project and the Center on Wrongful Convictions." Emily Barone, *The Wrongly Convicted: Why more falsely accused people are being exonerated today than ever before*, Time, http://time.com/wrongly-convicted/ (emphasis added) (last visited Aug. 13, 2025). The Washington Post reports that

the average time served for the 1,625 exonerated individuals in the registry is more than nine years. Last year, three innocent murder defendants in Cleveland were exonerated 39 years after they were convicted—they spent their entire adult lives in prison—and even they were lucky: We know without doubt that the vast majority of innocent defendants who are convicted of crimes are never identified and cleared.

Samuel Gross, Opinion, *The Staggering Number of Wrongful Convictions in America*, Washington Post (July 24, 2015), http://wapo.st/1SGHcyd?tid=ss_mail&utm_term=.4 bed8ad6f2cc.

¶6.    Rather than violating Shelton's fundamental rights by restricting his access to the courts, I would simply find his petition for post-conviction relief lacked merit.