# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CP-01245-COA

**MONROE RANDLE A/K/A MONRO RANDLE**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:             08/02/2016
TRIAL JUDGE:                  HON. JAMES T. KITCHENS JR.
COURT FROM WHICH APPEALED:    CLAY COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       MONROE RANDLE (PRO SE)
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY:  KAYLYN HAVRILLA MCCLINTON
NATURE OF THE CASE:           CIVIL - POSTCONVICTION RELIEF
DISPOSITION:                  AFFIRMED - 09/26/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., WILSON AND WESTBROOKS, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Monroe Randle appeals the denial of his petition for postconviction relief (PCR) in the Circuit Court of Clay County.  In a prior appeal, this Court found that the circuit court had erroneously ruled that it lacked jurisdiction to determine whether the Mississippi Parole Board's decision was correct.  *Randle v. State*, 210 So. 3d 1022, 1023 (¶6) (Miss. Ct. App. 2015).  We remanded Randle's cause to the circuit court for an evidentiary hearing.  *Id.* Following the hearing, the circuit court denied Randle's PCR petition, finding that the parole board had reasonable cause to revoke Randle's parole.  Finding no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     In January 1980, Randle pled guilty to capital murder and was sentenced to life in

prison. Randle was paroled on February 24, 2010, and was allowed to reside in Ohio via an interstate compact, as codified in Mississippi Code Annotated section 47-7-81 (Rev. 2015). On May 18, 2012, Randle was arrested in Ohio and charged with: (1) threatening serious bodily harm to his half-brother and his half-brother's girlfriend, and (2) possession of a gun.

¶3.    Randle's half-brother, Danny Woods, and Woods's girlfriend, Robin Graham, gave written statements to Randle's Ohio parole officer. Woods and Graham claimed that Randle had been stalking Graham, making sexual advances, calling her cell phone, and leaving threatening voicemail messages. Graham played the voicemail messages for the parole officer. Randle reported to his parole officer and admitted calling Graham and leaving threatening messages on her phone. Randle was then arrested for violating his parole. Randle signed a document entitled "notification of release violation hearing."

¶4.    That document reiterated Randle's right to testify, present witnesses or evidence, confront and cross-examine witnesses, and additional rights. The notification also apprised Randle of the accusations against him, and Randle admitted to each charge with mitigation. He also signed a "waiver of probable cause hearing/for interstate compact offenders only." That waiver relinquished Randle's right to a preliminary hearing. By signing the waiver, Randle also admitted to committing the alleged violations and that probable cause was found.

¶5.    Randle returned to Mississippi and went before the parole board for a revocation hearing. Following the hearing, the parole board revoked Randle's parole based on his arrest for simple assault and firearm possession. Aggrieved with the revocation of his parole, Randle filed a number of motions challenging the validity of the parole board's decision.

2

¶6. Randle filed a PCR petition in the circuit court, but the court erroneously ruled it did not have jurisdiction to review the parole board's decision. That ruling was appealed to this Court, and we remanded Randle's cause back to the circuit court for an evidentiary hearing. *Randle*, 210 So. 3d at 1023 (¶6). At the evidentiary hearing, parole-board attorneys for the Mississippi Department of Corrections (MDOC) presented Woods's and Graham's statements, Randle's Ohio-arrest information, an email stating that Randle waived his probable-cause hearing and admitted guilt, Randle's signed notification of release-violation hearing, his signed waiver of probable-cause hearing, and the preliminary-revocation-hearing report.

¶7. MDOC also presented the testimony of Robert Wentworth, a hearing officer with the parole board. Wentworth stated that if a parolee on an interstate compact is arrested, the State of Mississippi must first determine whether the arresting state would revoke the offender's parole. If the arresting state would revoke the offender's parole, the State of Mississippi must "retake" or bring the offender back to the state for a parole-board hearing.

¶8. Wentworth stated that retake was mandatory for Randle's case, because Ohio would have revoked Randle's parole. As a result, Mississippi was required to bring Randle back to the state for a parole-revocation hearing. According to Wentworth, the parole board was presented with evidence that Randle left five threatening voicemail messages for Graham. The board was also presented with Woods's and Graham's written statements. Woods and Graham stated that they were both concerned for their safety and feared that Randle might physically harm them.

3

¶9. According to Wentworth, jurisdictions involved in an interstate compact do not usually pursue the pending charges if they feel the threat posed by the offender/parolee is alleviated. For that reason, Wentworth stated that is was not uncommon for Ohio to refuse to pursue charges after Randle was taken by the state that paroled him. Wentworth stated that it was irrelevant whether Randle was officially charged on those crimes because they were criminal acts, whether pursued or not. Wentworth reiterated that the evidence of Randle's admission of guilt "with mitigation," the witness statements, and the statements of Randle's parole officer that he listened to the voicemail messages, resulted in the revocation of Randle's parole.

¶10. During Randle's evidentiary hearing for his PCR petition, Randle argued that the parole board erred in revoking his parole, because he was neither charged with nor convicted of the alleged crimes. Randle challenged the credibility of Woods's and Graham's statements and asserted that he did not intend to admit to the offenses or waive his right to a preliminary hearing.

¶11. At the conclusion of the evidentiary hearing, the circuit judge notified the parties that he would review the appropriate standards of law and render a decision. On August 2, 2016, the court denied Randle's PCR petition, concluding that the parole board had reasonable cause to revoke Randle's parole based upon the evidence presented, including Randle's admission of guilt. Randle appeals.

**STANDARD OF REVIEW**

¶12. An appellate court will not reverse a trial court's dismissal of a PCR motion unless

4

the trial court's decision was clearly erroneous. *Fortenberry v. State*, 151 So. 3d 222, 224 (¶5) (Miss. Ct. App. 2014) (citing *Means v. State*, 43 So. 3d 438, 441 (¶6) (Miss. 2010)). The Mississippi Supreme Court has held that "before one released on parole may be returned to custody, [the State] must [show] that he has violated the terms and conditions of parole." *Elkins v. State*, 116 So. 3d 185, 186 (¶8) (Miss. Ct. App. 2013).

## DISCUSSION

¶13.    Randle asserts that his parole was impermissibly revoked, because the evidence relied upon was insufficient and legally defective. Randle further argues that the circuit judge exhibited bias when he referenced Randle's two prior felony convictions during the hearing. Randle contends that the circuit court violated his constitutional rights when it determined that the parole board did not err in revoking his parole. We disagree.

¶14.    At Randle's evidentiary hearing, MDOC's attorney presented evidence that Randle was arrested for simple assault by threat and for possession of a firearm. MDOC presented evidence of Randle's admission of guilt "with mitigation" to committing the offenses. Woods's and Graham's victim statements and the testimony of a parole-board hearing officer were also presented during the hearing. Wentworth testified that the board received evidence that Randle left five threatening messages on Graham's voicemail. Additionally, evidence that Randle waived a probable-cause hearing in Ohio was submitted to the circuit court. The circuit court found that there was no implication that the board did not follow the law. Moreover, the circuit court found that the board had reasonable cause to revoke Randle's

5

parole, because he admitted to the charges and turned himself in to the police.[1]  We agree.

¶15.    Randle also argues that the written statements by Woods and Graham were insufficient to prove he violated his parole, because he was neither indicted for nor convicted of the charges.  Nevertheless, Wentworth testified that, though criminal charges may not be pursued for a criminal act, the revocation of parole does not necessitate an indictment or conviction of the crimes charged.  Our supreme court has found that "[a] probationer does not have to be convicted of a crime to be in violation of his probation but, rather, probation may be revoked when it is more likely than not that a violation has occurred." *McCalpin v. State*, 166 So. 3d 24, 26-27 (¶7) (Miss. 2013).  A parolee does not have to be convicted of crimes charged to establish a violation of parole.  This argument is without merit.

¶16.    Randle also argues that Woods's and Graham's statements were inadmissible under the Mississippi Rules of Evidence.  Randle asserts that the statements made by Graham and Woods were hearsay.  However, this Court has previously found that the Mississippi Rules of Evidence do not apply to proceedings "granting or revoking probation." *Forshee v. State*, 853 So. 2d 136, 140 (¶18) (Miss. Ct. App. 2003) (citing *Younger v. State*, 749 So. 2d 219, 221 (¶9) (Miss. Ct. App. 1999)).  "Therefore, the rule barring hearsay does not apply, and hearsay evidence is properly admittable in such hearings." *Id.*

¶17.    Lastly, Randle argues he was unfairly prejudiced when the circuit court referred to his prior felony convictions.  He claims that the court's actions amounted to reversible error, because mentioning his prior convictions illustrated bias.  However, the circuit judge

---

[1] Though the circuit court found that Randle turned himself in to a police officer, Randle actually turned himself in to his Ohio parole officer.

mentioned Randle's prior convictions when discussing the genesis of Randle's PCR petition. There is no indication that the mere reference to Randle's prior conviction demonstrates bias. We find that this argument is without merit.

¶18.    "[P]rior to completion of the revocation hearing the State must offer actual proof that the petitioner [more likely than not] committed an act violating the terms and conditions of his parole, and the mere fact that he was arrested and charged with a crime may hardly suffice." *Elkins*, 116 So. 3d at 188-89 (¶13) (quotations omitted). During revocation hearings, the State has to prove by a preponderance of the evidence that the parolee violated parole. *Id.* at (¶14). The circuit court considered the evidence presented to the parole board during Randle's revocation hearing. Randle admitted to Graham's and Woods's allegations and waived his right to a preliminary hearing. Graham and Woods made written statements to Randle's Ohio parole officer and played the five voicemail messages that Randle admitted to making. As a result, the circuit court found that the parole board had reasonable cause to revoke Randle's parole. Therefore, we find that the circuit court did not err in denying Randle's PCR petition.

¶19.    **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.**