# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CP-00577-COA

**JAMES HOWARD GRAY A/K/A JAMES GRAY**          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2016 |
| TRIAL JUDGE: | HON. VERNON R. COTTEN |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES HOWARD GRAY (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 04/17/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.

### IRVING, P.J., FOR THE COURT:

¶1. James Howard Gray, proceeding pro se, appeals the judgment of the Scott County Circuit Court and argues that the court erred in dismissing his motion for post-conviction relief (PCR) for four reasons: (1) his motion should not have been barred as a successive writ; (2) his sentence was illegal; (3) his probation should not have been revoked; and (4) he was denied counsel at his revocation hearing. We affirm.

FACTS

¶2. On April 3, 2007, Gray was indicted on one count of statutory rape. On February 18, 2008, he pleaded guilty to the lesser crime of gratification of lust. He was sentenced to

fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended and five years to serve, followed by five years of post-release supervision. The court also ordered him to pay a $1,500 fine and court costs in monthly installments of $150. According to the State, Gray's post-release supervision began on April 11, 2013.

¶3. On March 27, 2014, Gray was arrested on three counts of uttering a forgery in Scott County. He was subjected to a revocation hearing; however, the circuit court did not revoke his post-release supervision. Essentially, Gray was given a second chance to abide by the conditions of his post-release supervision; however, on June 13, 2014, he was charged with two counts of grand larceny. On August 18, 2014, a second revocation hearing was held, and Gray's MDOC probation officer Michael Gilmer testified about Gray's most recent arrest and his failure to pay the fine and court costs to the circuit clerk in the amount of $1,593, as ordered by the court. As a result, his post-release supervision was revoked. Gray was not represented by counsel at the revocation hearing.

¶4. By Gray's own admission in his current PCR motion, he has previously filed two PCR motions attacking his sentence and the revocation of his post-release supervision. As noted by the court in its order, on May 22, 2015, Gray filed a motion to clarify, and on November 9, 2015, he filed a motion to reconsider his sentence. The court treated them as PCR motions and denied both. Gray did not appeal either denial.

¶5. On February 4, 2016, Gray filed a third PCR motion that is the basis for this current appeal, again, attacking his sentence and revocation. Consequently, the court denied and

dismissed his motion as a procedurally barred successive writ. Gray appeals.

## DISCUSSION

¶6. "When reviewing a lower court's decision to deny a [PCR motion, an appellate court] will not disturb the trial court's factual findings unless they are found to be clearly erroneous." *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999). "But when issues of law are raised, the proper standard of review is de novo." *Means v. State*, 43 So. 3d 438, 441 (¶6) (Miss. 2010).

### I. Successive Writ

¶7. Gray argues that his current PCR motion is not a successive writ because it addresses the court's errors in violation of his fundamental constitutional rights. He cites *Means* for the principle that "a PCR motion is excepted from the successive-writ bar if the [movant] claims that his probation, parole[,] or conditional release has been unlawfully revoked." *Id*. at (¶8) (emphasis and internal quotation marks omitted). Gray claims that his post-release supervision was illegally revoked. He also claims that his fundamental right to due process was violated when the court illegally suspended ten years of his initial sentence in 2008.

¶8. The State responds that Mississippi Code Annotated section 99-39-5(1)(g) (Rev. 2015) provides that an inmate who claims that his probation, parole, or conditional release was unlawfully revoked may file a PCR motion. However, the State argues that Mississippi Code Annotated section 99-39-23(6) (Rev. 2015) provides that an order denying a PCR motion is considered a final judgment and a bar to a second or successive motion. The State

3

asserts that Gray's current PCR motion is successive and should be barred because he has twice presented these arguments to the court and received a ruling on the merits of his claims. We agree. As the State points out, the Mississippi Supreme Court has held that "the exceptions under . . . [s]ection 99-39-23(6) only allow the filing of a successive writ if the argument presented within the writ falls under one of the exceptions and has not been previously argued and a decision rendered on the merits by the trial court." *Fluker v. State*, 170 So. 3d 471, 475 (¶10) (Miss. 2015). Since the court has previously addressed Gray's arguments in two prior post-conviction proceedings, his current motion is successive and therefore barred. Notwithstanding the successive nature of his motion, we will address the merits of Gray's issues on appeal.

## II. Illegal Sentence

¶9. Gray claims that his initial sentence in 2008 was illegal. When he was sentenced in 2008, Mississippi Code Annotated section 47-7-33 (Rev. 2000) prohibited the suspension of all or part of a sentence when a defendant had been previously convicted of a felony. Although Gray had been convicted of child molestation in 1991, the court suspended ten years of his 2008 sentence for gratification of lust. Gray contends that, as a previously convicted felon, he was prohibited from receiving a suspended sentence. He now requests that he be discharged from his illegal sentence.

¶10. The State concedes that the court erred by giving Gray a suspended sentence. However, the State asserts that Gray was not harmed by being granted a suspended sentence.

4

As the State notes, this Court has held that

> if[,] as a result of a plea bargain[,] a prior felon voluntarily accepts an offered suspended sentence and some form of probation[,] this becomes by agreement an enforceable sentence. Furthermore, a defendant should not be able to attack a lighter, illegal sentence [that] benefits him simply because it serves his interest to do so, when the legal sentence would have been more severe.

*Edwards v. State*, 916 So. 2d 542, 544 (¶5) (Miss. Ct. App. 2005) (internal citations and quotation marks omitted). Accordingly, Gray suffered no prejudice from the illegally lenient sentence. He cannot reap the benefits of that sentence and now claim to have been prejudiced as a result. This issue is without merit.

### III. Post-Release-Supervision Revocation

¶11. Gray argues that his post-release supervision was revoked without proper due process. He contends that "a petitioner's probation cannot be revoked merely on the grounds of a finding that a probationer has been arrested." *McGaughy v. State*, 954 So. 2d 452, 454 (¶10) (Miss. Ct. App. 2006) (internal quotation marks omitted). He also contends that his post-release supervision was revoked for the condition of non-payment of his fine and court costs without the court performing an inquiry as to the reason he failed to pay. He cites *Bearden v. Georgia*, 461 U.S. 660, 665, 672 (1983), which provides that a sentencing court cannot properly "revoke a defendant's probation for failure to pay the imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate." He further cites Mississippi Code Annotated section 99-19-20(2) (Rev. 2015), which states in pertinent part:

> The defendant may be imprisoned until the fine is paid if the defendant is financially able to pay a fine and the court so finds, subject to the limitations hereinafter set out. The defendant shall not be imprisoned if the defendant is financially unable to pay a fine and so states to the court in writing, under oath, after sentence is pronounced . . . .

According to Gray, there were no substantial grounds to revoke his post-release supervision, other than his arrest.

¶12. The State responds that it "was not required to prove that [Gray] committed a crime but only that he *more likely than not* violated the terms of [his post-release supervision]." *See Braziel v. State*, 186 So. 3d 424, 427 (¶14) (Miss. Ct. App. 2016) (emphasis added and internal quotation marks omitted). Officer Gilmer testified that Gray had not paid the restitution or the fines. The State concedes that the court did not inquire as to why he had failed to pay his court costs, and Gray did not offer a reason, although he was given an opportunity to speak at his revocation hearing. *See Silliman v. State*, 8 So. 3d 256, 258 (¶10) (Miss. Ct. App. 2009) (finding that "the circuit court should not revoke probation based solely on a probationer's failure to pay fines and fees without first inquiring into the reasons he failed to pay his fines and fees"). Here, the State asserts that Gray's revocation was not based solely on his failure to pay but also on the new grand larceny charges.

¶13. We find that the revocation of Gray's post-release supervision hinged on two things: (1) whether he violated the terms of his post-release supervision by being arrested for two counts of grand larceny and that he more than likely committed the offenses, and (2) whether he failed to pay court costs in the amount of $1,593 at a time when he had the ability to pay.

6

As to the first basis for the revocation, no evidence was adduced at the revocation hearing regarding the offenses other than the fact that Gray had been charged by the Scott County authorities with the offenses. When Gray informed the trial court that he had a letter from his boss stating that he wasn't going further with the charges, the court stated: "Well, you know when it's filed, a person like that doesn't have any authority to say I won't go forward with it, so that's not his choice." The trial court, noting that the cases were still on the books, stated that the "[c]ourt is familiar with the law that allows when there is likelihood of the cases going forward and conviction that the court has the authority to revoke the probation."

¶14. We note that Gray did not allege in his PCR motion that he lacked the ability to pay the court costs, nor does he allege in his appellate brief that he lacked such ability. Instead, he relied before the trial court, as he does here, on the well-established law that a trial court should inquire into the probationer's ability to pay before revoking the probationer's probation. *See Silliman*, 8 So. 3d at 258 (¶10).

¶15. The court did not perform the requisite inquiry as to why Gray had not made the payments; therefore, it would be improper to find that the trial court concluded that Gray had the ability to pay but chose not to do so. We note, however, that Gray stated in his PCR motion that he was paying his supervision fees. Therefore, it is not totally unreasonable to assume that if Gray had sufficient money to pay his supervision fees, he may have had money to pay the monthly payment of $150 toward his court costs. There is also some evidence in the record that he was working at the time he was arrested on the larceny charges.

7

Nevertheless, as stated, the trial court made no inquiry as to Gray's ability to pay.

¶16.    The only question left is whether the court could find that Gray more likely than not violated the terms of his probation because of the grand larceny charges. Despite Gray's claim that the charges were remanded to the justice court, the appellate record is devoid of any explanation as to the disposition of the grand larceny charges. Officer Gilmer testified that Gray had been charged but provided no facts as to the circumstances of those charges during the hearing. Additionally, Gray does not admit the validity of the charges.

¶17.    [T]he mere arrest of a probationer is not a violation of probation; rather, where the State seeks to revoke probation based on the commission of a crime, it must prove that a crime has been committed and that it is more likely than not that the probationer committed the offense.

*Braziel*, 186 So. 3d at 427 (¶13) (internal quotation marks omitted). In *Braziel*, this Court found that the trial court did not err in revoking Braziel's probation—despite the fact that the evidence offered regarding one alleged violation may have been insufficient to support revocation—because the trial court was presented with ample evidence that Braziel had violated other conditions of his probation, namely, associating with a person of disreputable or harmful character and using drugs. *Id*. at 427-28 (¶¶14-16). Unlike *Braziel*, here, there are no facts and circumstances that establish that Gray *more likely than not* violated any of the other terms of his post-release supervision. We find that the trial court erred, as the State did not prove that Gray more likely than not committed the offenses. Further, since the court did not inquire as to the reason Gray had not paid his court costs, his revocation could not be legally predicated on his failure to pay those costs, as he may have been financially unable

8

to do so. Therefore, the State's contention that Gray's failure to pay his court costs was a basis for supporting revocation does not withstand constitutional muster.

¶18. As previously stated, excepted from procedural bars "are those cases in which the petitioner claims that his sentence has expired or his probation, parole[,] or conditional release has been unlawfully revoked." Miss. Code Ann. § 99-39-23(6) (Rev. 2015). However, to reiterate, this Court in *Lyons v. State*, 990 So. 2d 262, 265 (¶13) (Miss. Ct. App. 2008), held:

> We do not find that the exception in section 99-39-23(6) allows an inmate to relitigate the issue that was already decided. To the contrary, we have previously stated, the exceptions under . . . [s]ection 99-39-23(6) only allow the filing of a successive writ if the argument presented within the writ falls under one of the exceptions and *has not been previously argued and a decision rendered on the merits by the trial court*.

(Emphasis added and internal quotation marks omitted).

¶19. Notwithstanding the fact that the trial court erred in revoking Gray's post-release supervision, he is not entitled to any relief because this is his third PCR motion addressing this issue. In its order denying Gray's PCR motion, the circuit court stated:

> [Gray] has previously attacked his sentence as well as his probation revocation. On May 22, 2015, [Gray] filed his "Motion to Clarify Sentence." This [c]ourt denied [Gray's] requested relief by [o]rder dated June 2, 2015. [Gray] then filed his "Motion for Reconsideration of Sentence" on November 9, 2015. This [c]ourt again denied [Gray] any requested relief by [o]rder dated November 23, 2015. Presently, [Gray's] motion constitutes a third pleading in which he attacks his sentence and probation revocation. Accordingly, this court, having already addressed [Gray's] grievances, denies [Gray] any requested relief and dismisses his petition.

As stated, the appeal before us is from the denial of Gray's third PCR motion that was filed

9

on February 4, 2016. He did not appeal from the denial of either his first or second PCR motions, and the orders denying those motions had become final prior to Gray's filing the current motion. Therefore, we find that the issues presented are procedurally barred.

*IV. Right to Counsel*

¶20. Gray next argues that the court erred by failing to provide him counsel during his revocation hearing. He cites the Mississippi Supreme Court for the principle that "every convicted defendant has the absolute right to one meaningful opportunity to present his claim of ineffective assistance of counsel." *Read v. State*, 430 So. 2d 832, 842 (Miss. 1983). He also seems to claim that he received ineffective assistance of counsel at some unspecified time, as he states that his counsel "did little-to-nothing to present the complex situation to the trial court." He further states that a review of the record will show that to be fact. As stated, however, Gray was unrepresented at his revocation hearing; therefore, it is unclear which attorney he contends was ineffective.

¶21. The State responds that Gray fails to make a plausible argument and provide applicable supporting authority. The State cites our supreme court, which has held:

> It is well established in Mississippi that there is no per se right to counsel at revocation hearings. However, when the issues relevant to the hearing are complex or difficult to develop, the court should appoint counsel for the defendant. The presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings.

*Smith v. State*, 196 So. 3d 986, 996 (¶30) (Miss. Ct. App. 2015) (internal citations and quotation marks omitted). The State asserts that the issues at Gray's revocation hearing were

10

not complex or difficult to develop; therefore, the trial court was not required to provide Gray with counsel. "Under Mississippi law, probation may be revoked upon a showing that the defendant more likely than not violated the terms of probation." *Id*. at (¶31) (quoting *Bell v. State*, 117 So. 3d 661, 664 (¶15) (Miss. Ct. App. 2013)); *see also* Miss. Code Ann. § 47-7-34(2) (Rev. 2015) (providing that, "[p]rocedures for termination [of post-release supervision] and recommitment shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence as required pursuant to Section 47-7-37").

¶22.    Gray's revocation simply hinged on whether he violated the terms of his post-release supervision by being arrested and failing to pay his supervision fees and court assessments. The court instructed Gray that he could cross-examine witnesses, testify on his own behalf, and call any witnesses that he wanted. Despite those admonishments, Gray asked only one question of Officer Gilmer, that related, somewhat unnecessarily, to the date Gray was released on post-release supervision. Based on the straightforward nature of his revocation hearing, and Gray's failure to provide any meaningful argument to the contrary, we find that the court was not required to appoint counsel. This issue is without merit.

¶23.    **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**