# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-00478-COA

**MEIKA DESEAN BRITTON**                                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                        **APPELLEE**

DATE OF JUDGMENT:                04/13/2020
TRIAL JUDGE:                     HON. CELESTE EMBREY WILSON
COURT FROM WHICH APPEALED:       DESOTO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          MEIKA DESEAN BRITTON (PRO SE)
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: LAUREN GABRIELLE CANTRELL
NATURE OF THE CASE:              CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                     AFFIRMED - 03/23/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.

## McDONALD, J., FOR THE COURT:

¶1. Meika Desean Britton appeals the DeSoto County Circuit Court's denial of his motion for post-conviction collateral relief (PCR). Finding no error, we affirm.

## Facts and Procedural History

¶2. A DeSoto County grand jury indicted Britton for child exploitation pursuant to Mississippi Code Annotated section 97-5-33(7) (Supp. 2007) in 2009. In 2011, Britton pled guilty via an *Alford*[1] plea. The circuit court sentenced Britton to fifteen years, with five years

---

[1] In *North Carolina v. Alford*, 400 U.S. 25 (1970), the United States Supreme Court held that an individual accused of a crime may voluntarily, knowingly, and understandably consent to a prison sentence even if he is unwilling or unable to admit his participation in the alleged acts. *Id*. at 37. "In short, an *Alford* plea is when the trial court accepts a guilty

to serve, in the custody of the Mississippi Department of Corrections (MDOC) and ten years of post-release supervision (PRS) with five years reporting. Britton was released from prison on December 31, 2015.

¶3. In March 2016, concerned parents filed a police report with the Southaven Police Department once they had discovered that their fourteen-year-old daughter had been sending text messages to forty-six-year-old Britton. Investigator Brandon Rushing began an investigation and discovered that Britton was on PRS because of his prior charge of child exploitation. He contacted Britton's probation officer to arrange a meeting with Britton. During the meeting, Investigator Rushing asked Britton to retrieve his cell phone from his vehicle. Once Britton retrieved his phone, he immediately began pushing buttons and stated that he did not want his probation officer to see the content. Officer Rushing seized Britton's phone and later obtained a search warrant. Britton's phone revealed that he had sent several Facebook messages to minor children.

¶4. A conversation with a fifteen-year-old minor boy revealed that the boy requested that Britton purchase alcohol and cigarettes for him, which Britton did. Britton also discussed sexually explicit content with the minor boy. One message stated, "But funny [sic] is on the massage you got hard lol." The minor boy did not respond. Britton then sent more messages, stating, "[Y]ou're ignoring what I said about the massage" and "admit the truth." The minor responded, "What?" Britton responded, "[T]hat you got hard, dork," to which the minor stated that he did.

plea despite a defendant's protestation of innocence when there is strong evidence of guilt." *Kinney v. State*, 203 So. 3d 645, 647 (¶7) (Miss. Ct. App. 2016).

¶5.     Britton had another conversation with a seventeen-year-old boy on Facebook, which revealed that he discussed oral sex between two fifteen-year-old boys and a seventeen-year-old girl. Britton requested that the minors film their sexual encounters. Additionally, there were other messages in which Britton was requesting to see the minor boy's penis. With this evidence, Investigator Rushing concluded that Britton solicited sexuality explicit information, pictures, and products from minors. The State filed a petition to revoke Britton's PRS based on his new acts of child exploitation and contribution to the delinquency of a minor. Britton subpoenaed several witnesses to testify at his revocation hearing but failed to subpoena any victims. At the hearing, he had six witnesses to testify in his behalf. But he did not inform the court that he required testimony of any victims, nor did he request a continuance to have any victims subpoenaed. After his revocation hearing on May 13, 2016, the circuit court found that Britton had violated the terms of his PRS by committing the two new acts. The court revoked his PRS and ordered him to serve his suspended ten-year sentence in the custody of the MDOC.

¶6.     In February 2017, Britton filed his first pro se PCR motion regarding his PRS revocation, alleging that his revocation was unlawful based on the following: (1) that minimum due process requirements were not met in the revocation hearing; (2) that his counsel provided ineffective assistance; and (3) that there was insufficient evidence to support his revocation. The circuit court denied Britton relief, finding that his issues were without merit. This Court affirmed the circuit court's denial.[2]

---

[2] *Britton v. State*, 241 So. 3d 639 (Miss. Ct. App. 2018).

¶7. Britton filed a second pro se PCR motion on September 26, 2019, reasserting many issues that were raised in his first PCR motion. On April 13, 2020, the circuit court denied Britton's motion, finding that the motion was successive, time-barred, and without merit.

¶8. Britton appeals the denial of the second PCR motion, raising the following issues: (1) whether his PCR motion was procedurally barred; (2) whether his due process rights were violated by not being able to confront a witness about whom he had new information in an unsworn affidavit; (3) whether Britton's Fourth and Fourteenth Amendment rights were violated by the search and seizure of his cell phone and information contained in warrant affidavits;[3] and (4) whether he was innocent of the "crimes" that resulted in the PRS revocation. Finding the PCR motion to be procedurally barred, with no statutory or constitutional exceptions to the bar, we affirm.

**Standard of Review**

¶9. "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's decision if the trial court abused its discretion and the decision is clearly erroneous[.]" *Green v. State*, 242 So. 3d 176, 178 (¶5) (Miss. Ct. App. 2017). "When reviewing questions of law, our standard is de novo." *White v. State*, 59 So. 3d 633, 635 (¶4) (Miss. Ct. App. 2011).

**Discussion**

**I.      Whether Britton's PCR motion is procedurally barred.**

---

[3] The issue of the search warrant was raised on appeal after Britton's first PCR motion but was not raised before the circuit court. Our Court found that the issue was procedurally barred. *Britton*, 241 So. 3d at 645 (¶22). Notwithstanding the bar, we found that Investigator Rushing properly obtained a search warrant. *Id.*

4

¶10.    Britton argues that the circuit court erred in finding that his PCR motion was not excepted from the procedural time-bar. We disagree.

¶11.    The Mississippi Uniform Post-Conviction Collateral Relief Act provides "an exclusive and uniform procedure for the collateral review of convictions and sentences." Miss. Code Ann. § 99-39-3(1) (Rev. 2015). Unless a statutory exception is applicable, a motion for relief must be made within three years after entry of the judgment of conviction. Miss. Code Ann. § 99-39-5(2) (Rev. 2015). The exceptions include (1) an intervening decision of either the United States Supreme Court or the Supreme Court of the State of Mississippi; (2) new evidence not reasonably discoverable at trial; or (3) an expired sentence or *an unlawful revocation of parole, probation, or conditional release*. *Id*. § 99-39-5(2)(a)(i), (b).

¶12.    "Errors affecting fundamental rights are [also] excepted from procedural bars." *Salter v. State*, 184 So. 3d 944, 950 (¶19) (Miss. Ct. App. 2015). Four fundamental-rights exceptions "have been expressly found to survive procedural bars: (1) the right against double jeopardy; (2) the right to be free from an illegal sentence; (3) the right to due process at sentencing; and (4) the right not to be subject to ex post facto laws." *Carter v. State*, 203 So. 3d 730, 731 (¶7) (Miss. Ct. App. 2016) (quoting *Salter*, 184 So. 3d at 950 (¶19)). Additionally, in some cases ineffective assistance of counsel can constitute a violation of a defendant's constitutional rights. *Coleman v. State*, 300 So. 3d 1044, 1052 (¶26) (Miss. Ct. App. 2020), *cert. denied*, 308 So. 3d 438 (Miss. 2020). "The burden of proof is on the movant to show [if] any statutory exceptions to the procedural bars have been met." *McCoy*

*v. State*, 230 So. 3d 1090, 1094 (¶9) (Miss. Ct. App. 2017).

¶13.    The Mississippi Supreme Court has held that "a second or subsequent challenge to the same revocation decision is barred as a successive motion under section 99-39-23(6)." *Fluker v. State*, 170 So. 3d 471, 475 (¶10) (Miss. 2015).  In *Fluker*, the Supreme Court quoted *Lyons v. State*, 990 So. 2d 262 (Miss. Ct. App. 2008), in addressing a second motion for PCR that challenged the same revocation decision as a former motion is successive:

> [W]e do not find that the exception in section 99-39-23(6) allows an inmate to relitigate the issue that was already decided. To the contrary, we have previously stated [that] "the exceptions under Mississippi Code Annotated Section 99-39-23(6) only allow the filing of a successive writ if the argument presented within the writ falls under one of the exceptions and has not been previously argued and a decision rendered on the merits by the trial court."

*Id*. (quoting *Lyons*, 990 So. 2d at 265 (¶13)).

¶14.    Although Britton's PCR motion was filed on September 26, 2019, more than three years after his PRS was revoked, our Supreme Court has held that PCR motions alleging an unlawful parole revocation are excepted from the statute of limitations.  *Fluker*, 170 So. 3d at 475-76 (¶12).  But based upon the record and the applicable law, Britton raises similar issues as those asserted in his first PCR motion in 2017, including the right to confront witnesses and whether there was sufficient evidence to support his revocation.  The circuit court denied Britton's first PCR motion, and this Court affirmed the denial.

¶15.    Britton's second PCR motion challenges similar issues that he raised in his first PCR motion including: (1) whether his due process rights were violated by not being able to confront a witness; (2) whether Britton's Fourth and Fourteenth Amendment rights were violated by the search of his cell phone; and (3) whether he was innocent of the alleged

6

crimes that resulted in his PRS being revoked. Therefore, his PCR motion is procedurally barred as a successive motion. *Dever v. State*, 210 So. 3d 977, 982 (¶19) (Miss. Ct. App. 2017). This issue is without merit.

**II.    Whether Britton's due process rights were violated by not being able to confront a witness.**

¶16. Britton argues that he should have been able to confront a victim based on "new evidence" that would have changed the outcome of his case. On September 26, 2019, when Britton filed his PCR motion, he briefly mentioned that he had new evidence: an unsworn affidavit from a minor child entitled "Declaration." The "Declaration" was later filed on September 30, 2019. The handwritten "Declaration" was from a friend of the victim in the incident that caused Britton's PRS revocation. The "Declaration" stated the victim only assumed that Britton requested sexually explicit content. Britton argues that because of the new evidence, he should have been allowed to confront both minor children at his revocation hearing.

¶17. The information contained in the "Declaration" is speculative at best. More problematic is that the statements in the "Declaration" were not sworn to. This Court has held that an unsworn affidavit is "merely a piece of paper with the word 'affidavit' as its title." *Chaney v. State*, 121 So. 3d 306, 309 (¶10) (Miss. Ct. App. 2013) (quoting *Thomas v. Greenwood Leflore Hosp.*, 970 So. 2d 273, 277 (¶19) (Miss. Ct. App. 2007)). Additionally, this Court has stated that Britton had called several witnesses at the revocation hearing but failed to call the victim when he had an opportunity to do so. *Britton*, 241 So. 3d at 643 (¶9). Britton also "did not inform the court that he required the testimony of the

7

victim or request a continuance in order to have the victim subpoenaed." *Id*. Therefore, this issue is without merit.

### III. Whether Britton's Fourth and Fourteenth Amendment rights were violated.

¶18. Although the issue regarding the confiscation of Britton's phone is procedurally barred, this Court previously determined that Investigator Brandon Rushing properly obtained a search warrant for Britton's phone. *Id.* at 645 (¶22). Britton now argues that his due process rights were violated because his phone was seized, and Investigator Rushing knowingly and intentionally made false statements with reckless disregard for the truth in his warrant affidavits, which Britton argues entitled him to a *Franks* hearing. *Franks v. Delaware*, 438 U.S. 154 (1978). Additionally, Britton argues that his revocation hearing was based on Investigator Rushing's hearsay testimony. We find these arguments to be without merit.

¶19. The United States Supreme Court has stated that "when an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *United States v. Knights*, 534 U.S. 112, 121-22 (2001).

¶20. The United States Supreme Court has also held that "[w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth

8

Amendment[, as incorporated in the Fourteenth Amendment,] requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-56.

¶21. Here, prior to meeting Britton, Investigator Rushing had gathered sufficient evidence to prove that Britton was engaged in criminal activity and that Britton was in violation of his PRS. Once Investigator Rushing told Britton to retrieve his phone, Britton began pushing buttons on his phone, stating that he did not want his probation officer to see the content. Investigator Rushing clearly had reasonable suspicion to seize Britton's cell phone. Additionally, Britton failed to make a substantial preliminary showing and provided no evidence that Investigator Rushing's statements in his affidavit for a search warrant or arrest warrant were knowingly false or made with reckless disregard for the truth. Britton does not state what he considers is "a knowing and intentional false statement" in Investigator Rushing's affidavit, nor is there is any proof of false statements. On the contrary, the record supports Investigator Rushing's search warrant affidavit, which stated that Britton had been inappropriately texting minor children. Investigator Rushing obtained the search warrant, which led to a full investigation of Britton's criminal activity.

¶22. The contents of Britton's phone revealed that he had been sending inappropriate Facebook messages to minor children, requesting sexually explicit pictures and videos. From there, Investigator Rushing filed an affidavit for an arrest warrant, in which he also did not make any false statements:

> Meika Desean Britton was in violation of section 97-5-33 of the MCA, 1972, In that said person committed the following act(s): did willfully, unlawfully and feloniously cause, solicit, advise and order a child to produce a visual depiction of sexually explicit conduct by telling a seventeen year old male to

send him a photograph of his penis, and also telling the seventeen year old to "film" three other children engaged in sexually explicit conduct.

¶23. Furthermore, while Britton argues that Investigator Rushing's testimony at his revocation hearing was improper hearsay, hearsay is inapplicable in proceedings regarding revocation. We have previously held that "Mississippi Rules of Evidence do not apply to proceedings granting or revoking probation." *Randle v. State*, 228 So. 3d 334, 337 (¶16) (Miss. Ct. App. 2017) (quoting *Forshee v. State*, 853 So. 2d 136, 140 (¶18) (Miss. Ct. App. 2003)). "Therefore, the rule barring hearsay does not apply, and hearsay evidence is properly admittable in such hearings." *Id*. Accordingly, we find this issue to be without merit.

**IV. Whether Britton was innocent of the alleged crimes that resulted in his PRS being revoked.**

¶24. Britton argues that he is innocent of child exploitation and contributing to the delinquency of a minor, which were the bases of PRS revocation, and that the circuit court failed to address this argument.

¶25. "Under Mississippi law, probation may be revoked upon a showing that the defendant more likely than not violated the terms of probation." *Gray v. State*, 269 So. 3d 331, 337 (¶21) (Miss. Ct. App. 2018) (quoting *Smith v. State*, 196 So. 3d 986, 996 (¶30) (Miss. Ct. App. 2015)). Here, there is a sufficient showing that Britton more likely than not committed the crimes asserted based on Investigator Rushing's testimony, the investigation, and through documentation of Britton's text and Facebook messages. Therefore, this issue is without merit.

**Conclusion**

10

¶26. Finding Britton's PCR motion procedurally barred as a successive motion with no exceptions, the circuit court's denial of his PCR motion is hereby affirmed.

¶27. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**