# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-00597-COA

**JAMES LEE THOMAS A/K/A JAMES L. THOMAS**        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/10/2017 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JAMES LEE THOMAS (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| NATURE OF THE CASE: | CIVIL - POSTCONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 07/31/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.

### CARLTON, J., FOR THE COURT:

¶1. In June 2008, James L. Thomas pleaded guilty to armed robbery. Thomas was sentenced to serve twenty years, with eight years to be served in the custody of the Mississippi Department of Corrections (MDOC), and nine years suspended. Thomas's sentence was also conditioned on him successfully completing three years on post-release supervision (PRS); successfully completing the circuit court's community service program; and paying court costs and restitution totaling $4,699.00.

¶2. Thomas was released on PRS on February 19, 2015. In July 2016, the Circuit Court of Jones County (Second Judicial District) found that Thomas had committed two technical

violations of his PRS conditions. It ordered that Thomas's PRS would be extended for an additional two years beyond the original PRS expiration date, and that Thomas should be transported to the Pascagoula Restitution Center where he would remain until all court costs and restitution were paid.

¶3. Thomas was discharged from the restitution center on August 26, 2016. In September 2016, the State petitioned to revoke Thomas's probation due to several alleged violations of certain conditions of his PRS. A revocation hearing was held, and the circuit court found that Thomas had committed three technical violations of his PRS conditions. The circuit court revoked Thomas's PRS and ordered Thomas to serve his nine-year suspended sentence. The circuit court summarily dismissed Thomas's subsequently filed motion for postconviction relief (PCR).

¶4. On appeal, Thomas asserts, pro se, that his PRS was unlawfully revoked because (i) his due process rights were violated during his September 9, 2016 revocation hearing; (ii) the circuit court erred in reinstating Thomas's suspended sentence based upon three technical violations because the court's actions were not within the guidelines of Mississippi Code Annotated section 47-7-37 (Rev. 2015); and (iii) his original sentence was illegal because he had not signed the acknowledgment on page four of the June 6, 2008 sentencing order, and thus the circuit court was without authority to reinstate his suspended sentence. We find no violation of Thomas's due process rights at the September 9, 2016 revocation hearing, and we further find that the circuit court was within its authority to impose Thomas's suspended sentence. We therefore affirm the circuit court's order denying Thomas's PCR motion.

## FACTS AND PROCEDURAL HISTORY

¶5. On June 3, 2008, Thomas filed a petition to plead guilty to the charge of armed robbery. As part of Thomas's plea agreement, the State dropped an aggravated assault charge against Thomas, and a separate felony-malicious-mischief charge (Cause No. 207-269-KR2) against him. Thomas, however, was still required to pay $4,023.50 in restitution to Veronica McCollum for her car relating to the felony-malicious-mischief charge.

¶6. Thomas's guilty-plea hearing took place on June 6, 2008. After accepting Thomas's guilty plea, the circuit court sentenced Thomas to serve twenty years, with eight years to be served in the full-time custody of MDOC, and nine years suspended, conditioned upon his successful completion of three years on PRS and his successful completion of the circuit court's community service program. Thomas was also required to pay court costs in the amount of $250.50; $425 restitution to the victim of the armed robbery; and, as noted above, $4,023.50 restitution to Veronica McCollum relating to the separate felony-malicious-mischief charge, totaling $4,699.00. The first installment on these payments was due within thirty days of Thomas being placed on PRS, and each installment was to be paid at the rate of $135 per month until paid in full. The sentencing order was entered June 6, 2008.

¶7. Thomas was released on PRS on February 19, 2015. The record indicates that on July 8, 2016, the circuit court issued a summons and order to show cause as to why Thomas's suspended sentence should not be revoked. The revocation hearing was set for July 26, 2016. The show-cause order was based upon Thomas's failure to pay any of his installments on his court costs and restitution obligations; his failure to perform community service as ordered;

3

and his failure to pay community-service supervision fees. Thomas was served with the summons and show-cause order on July 17, 2016.

¶8. The show-cause hearing was held on July 26 to allow Thomas to appear in open court so the circuit court could determine whether Thomas was in compliance with the PRS conditions of the June 6, 2008 sentencing order. At the hearing, the circuit court heard testimony from the Director of the Circuit Court Community Service Program, Jerald Parrish, who stated that Thomas had only participated in community service five times in 2016; failed to participate in community service since May 14, 2016; and had a supervision-fee arrearage of $600, with a total supervision-fee balance of $1,250. The record also contains a printout from the Jones County Circuit Clerk showing no payments had been made on Thomas's restitution or court costs obligations. The circuit court had the printout entered into evidence at the July 26 hearing.

¶9. On July 28, 2016, the circuit court issued an order modifying its original sentencing order. Based on the evidence before it, the circuit court found that Thomas had committed his first and second technical violations of the conditions of his PRS, namely (1) failure to make payments towards court costs and restitution as required; and (2) failure to report to community service and pay supervision fees as required. The circuit court ordered that Thomas's PRS would be extended for an additional two years beyond the original PRS expiration date, and that Thomas should be transported to the Pascagoula Restitution Center where he would remain until all court costs and restitution were paid.

¶10. Less than a month later, on August 26, 2016, Thomas was discharged from the

4

restitution center. On September 7, 2016, Donald C. Rogers, MDOC Probation and Parole Agent, filed an affidavit related to Thomas's conduct while on PRS, which set forth the following PRS violations:

> Condition b) The Defendant shall obey all orders of the Court and the Probation/Parole Agent. . . . Defendant was order[ed] on July 28[,] 2016 [to] be transported to the Pascagoula Restitution Center to stay until [he] completed [his court costs and restitution] payment[s]. The Defendant has failed to complete the Restitution Center by being kicked out due to failing to abide by the rules and regulations (failed to keep a job; testing positive for THC; and encouraging other[s] to refuse work, or participating in work stoppage on 8/26/16).

> Condition h) The Defendant shall [p]ay court costs, community service fees, fines and restitution. . . . Defendant has made no payments towards the court and owes **$4,699.00**. The Defendant has failed to pay community service fees and is in arrears of **$1,250.00**.

> Condition k) The Defendant shall participate in the District 18 Community Service Program. The Defendant has failed to participate in the program.

¶11. Based on the affidavit of Agent Rogers, the circuit court judge issued a warrant for Thomas. A hearing was held before the circuit court on September 9, 2016, to determine whether Thomas violated the terms of his PRS. Thomas was present and represented by counsel.

¶12. MDOC Officer Carrol Windham testified at the hearing as to the violations set forth in Agent Rogers's affidavit, including Thomas's discharge from the Pascagoula Restitution Center on August 26, 2016; his failure to make payments toward court costs and restitution as required; and his failure to participate in community service and pay participation fees as required. Regarding Thomas's failure to pay his installments on the court costs and restitution, the circuit court also examined a printout from the circuit clerk's office showing

5

no payments had been made as of September 9, 2016, and entered that record into evidence.

¶13.    Officer Shirlean Anderson, an employee of the Pascagoula Restitution Center, testified at the hearing about Thomas's discharge from the center. She described Thomas threatening bodily harm to her when she asked him to pick up his clothes off the floor.[1] Officer Anderson also testified about Thomas's work history, namely that he was working for a landscaping company, and when she came back from two days off of work, Thomas was no longer working at the landscaping job. She further testified that Thomas and three others were then sent to work at Boggy Vineyard, and "the guy [from Boggy Vineyard] called and said come pick them up, they didn't want to work anymore."

¶14.    Mr. Jerald Parrish testified about Thomas's record and performance of his community service obligations for 2016 up until July 28, 2016, when Thomas was sent to the restitution center. In that time period, Thomas had twenty-eight opportunities to report and reported only five times.

¶15.    Thomas testified on his own behalf that he never threatened Officer Anderson; he had not lost his jobs for wrongdoing; and he had receipts and check stubs showing that he had made payments while he was at the restitution center but that they were at his house. Thomas testified that if he could go back to work, he could pay his fines. The trial court then asked Officer Anderson whether the restitution center would take Thomas back. She replied, "No, sir."

---

[1] Specifically, Officer Anderson testified that she told Thomas to get his clothes off the floor. Thomas refused. She said that she then told Thomas to pick up the clothes, and he told her that he was going to bust her in the head.

¶16.   At the close of the hearing, the circuit court found that based on the proof before it, Thomas had committed three technical violations: (1) failure to participate in community service as required; (2) failure to pay his court costs and restitution as required; and (3) discharge from the restitution center.[2] The circuit court judge stated that he would be happy to review any receipts Thomas had that showed he had made payments while in the restitution center, and that he would modify his order if it changed anything. The circuit court judge further stated that he would need these receipts "pretty soon"; and he explained that even if Thomas produced receipts, if Thomas had not paid enough to become compliant with the sentencing order, the court would still find him in violation.

¶17.   The circuit court issued its PRS revocation and modification order on September 12, 2016, setting forth the testimony and evidence presented at the hearing, and finding that Thomas committed the above-stated three technical violations. The circuit court ordered that Thomas's nine-year sentence previously suspended was revoked, and further ordered that Thomas was to serve the remaining nine years of his sentence in the custody of MDOC.

¶18.   Thomas served his PCR motion on March 20, 2017 (filed April 10, 2017), asserting that his PRS was unlawfully revoked because (1) he was not given a preliminary hearing before his final revocation hearing; (2) he was denied due process at his final revocation hearing; and (3) he was not sentenced within the guidelines of section 47-7-37.

¶19.   By order entered April 10, 2017, the circuit court summarily dismissed Thomas's PCR

---

[2] The circuit court judge stated on the record that he had heard no evidence supporting two allegations listed in Agent Rogers' affidavit in support of a violation of condition b, testing positive for THC, and Thomas participating in a work stoppage. The circuit court dismissed those allegations.

7

motion. The circuit court first observed that Thomas's judgment of conviction on his guilty plea for armed robbery was entered on June 6, 2008, and thus Thomas's PCR motion, served on March 20, 2017, was time-barred under the limitations provision of the Uniform Post Conviction Collateral Relief Act (UPCCRA), Mississippi Code Annotated section 99-39-5(2) (Rev. 2015).[3] Addressing potential exceptions to the UPCCRA's time-bar, the circuit court found that Thomas's PRS was not unlawfully revoked[4] because the court sentenced him to serve his suspended sentence after determining that Thomas had three technical violations of conditions of his probation, which constitutes a sentence within the guidelines of section 47-7-37(5)(a). The circuit court further found that none of the other exceptions to the UPCCRA's time-bar were applicable to Thomas's PCR motion.

¶20. Thomas filed a motion for reconsideration of the circuit court's order in which he again mentioned he had receipts and W-2 forms that showed he had worked or paid on his restitution and court fees. No such information was attached to the motion, however, and there is no indication in the record that any receipts or check stubs were provided to the circuit court.[5] The circuit court denied Thomas's motion for reconsideration on April 24,

---

[3] *See* Miss. Code Ann. § 99-39-5(2) (providing that "[a] motion for relief under this article shall be made . . . in case of a guilty plea, within three (3) years after entry of the judgment of conviction").

[4] *See* Miss. Code Ann. § 99-39-5(1)(h) (providing that an exception to the time-bar under the UPCCRA includes cases in which the movant claims that "his probation, parole or conditional release [was] unlawfully revoked").

[5] Thomas supplemented the **appellate** record on March 29, 2018 (over a year and a half after his September 9, 2016 revocation hearing), and again on May 1, 2018, with a receipt from the Jones County Circuit Clerk dated October 19, 2017, showing Thomas had paid $250 in court fees, $219.38 in restitution, and owed a balance of $4,229.12.

8

2017.

¶21.    Thomas appealed, asserting, pro se, that (1) the circuit court erred by failing to conduct a preliminary hearing on his PRS revocation; (2) he was denied due process at his final revocation hearing because the evidence against him supporting revocation was not disclosed, and he received no written statement of the circuit court's reasons for revocation; and (3) the circuit court erred in reinstating Thomas's suspended sentence because it was not within the guidelines of section 47-7-37. Thomas filed a supplemental memorandum of law in which he asserted that his original sentence was illegal because he had not signed the acknowledgment on page four of the June 6, 2008 sentencing order, and thus the circuit court was without authority to reinstate his suspended sentence under the September 12, 2016 revocation order.

## STANDARD OF REVIEW

¶22.    "When reviewing a circuit court's denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of

Supplementing the appellate record with this receipt does not comply with the circuit court's request at the September 9, 2016 revocation hearing that Thomas and his counsel provide the circuit court with any receipts "soon" after the hearing. Further, the receipt shows a total payment of only $469.88. By the September 9, 2016 revocation hearing, Thomas owed $2,430 in court costs and restitution under the terms of the sentencing order. As noted above, the circuit court explained to Thomas at the hearing that even if he produced receipts, if Thomas had not paid enough to become compliant with the sentencing order, the court would still find him in violation. The payment of $469.88 does not put Thomas in compliance with his PRS conditions and does not affect the validity of the circuit court's determination that Thomas's non-payment of court costs and restitution constituted a technical violation of condition (h) of his PRS.

9

review." *Berry v. State*, 230 So. 3d 360, 362 (¶3) (Miss. Ct. App. 2017).

## DISCUSSION

¶23. In its order dismissing Thomas's PCR motion, the circuit court found that the motion, on its face, was time-barred under the three-year limitation provision of the UPCCRA because Thomas's judgment of conviction on his armed robbery charge was entered June 8, 2008, and Thomas's PCR motion was not served until March 20, 2017. *See* Miss. Code Ann. § 99-39-5(2) ("A motion for relief under this article shall be made . . . in case of a guilty plea, within three (3) years after entry of the judgment of conviction."). The circuit court also acknowledged that the UPCCRA provides for a number of exceptions to the time-bar, including, in relevant part, those cases in which the movant claims that "his probation, parole or conditional release [was] unlawfully revoked." Miss. Code Ann. § 99-39-5(1)(h). For the reasons set forth below, we affirm the circuit court's determination that Thomas's PRS was not unlawfully revoked, and we further find that Thomas has not shown any other exception to the UPCCRA's time-bar that warrants reversal of the circuit court's summary denial of his PCR motion.

### I. Due Process Requirements

¶24. Thomas, as the PCR movant, has the burden of demonstrating that his claims are not time-barred because an exception applies. *See McComb v. State*, 135 So. 3d 928, 932 (¶ 10) (Miss. Ct. App. 2014). In his first assignment of error, Thomas alleges that his suspended sentence was unlawfully revoked because his due process rights were violated at his revocation hearing. Thomas alleges the following due process violations: (1) he did not

10

receive a preliminary revocation hearing; and (2) at his formal revocation hearing, two of the six minimum due-process conditions required under *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), were not met; namely, condition (b) (disclosure of the evidence against him) and condition (f) (a written statement by the factfinder of the evidence relied upon and reasons for revoking his PRS).

¶25.    We acknowledge that under *Gagnon*, a probationer faced with revocation of his probation is entitled to (1) a preliminary hearing to determine whether probable cause existed to believe that he violated condition[s] of his probation; and (2) a final revocation hearing. *Presley v. State*, 48 So. 3d 526, 529 (¶11) (Miss. 2010) (citing *Gagnon*, 411 U.S. at 786). A final revocation hearing must include the following minimum due-process requirements:

> (a) written notice of the claimed violations of probation or parole; (b) disclosure to the probationer or parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation; (e) a neutral and detached hearing body such as a parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking probation or parole.

*Id.* (quoting *Gagnon*, 411 U.S. at 786) (internal quotation marks omitted).

¶26.    Regarding the lack of a preliminary hearing, Thomas did not raise this issue at his formal revocation hearing, and thus he is procedurally barred from raising it now. *Id.* at 528 (¶9).

¶27.    Procedural bar notwithstanding, we also reject Thomas's argument on the merits. Harmless-error standard applies "to a PCR [movant's] claim that failure to afford a

11

preliminary revocation hearing before final revocation violated his due-process rights."

*Robertson v. State*, 169 So. 3d 910, 913 (¶9) (Miss. Ct. App. 2014) (citing *Presley*, 48 So. 3d at 529-30 (¶¶13-14)). In particular, if Thomas cannot show he was prejudiced due to the lack of a preliminary hearing, and a formal revocation hearing was held that met due process requirements, then the lack of a preliminary revocation hearing is harmless error. *Presley*, 48 So. 3d at 530 (¶¶14-16).

¶28. In this regard, Thomas asserts, without citing specific, evidence-based examples, that his due process rights were violated at his formal revocation hearing because conditions (b) and (f) required under *Gagnon* were not met. A review of the record shows that this was not the case.

¶29. Condition (b) requires "disclosure to [Thomas] of [the] evidence against him." *Gagnon*, 411 U.S. at 786. The record shows ample evidence that this condition was met. Thomas was present at the September 9, 2016 revocation hearing and was represented by counsel. The State presented the evidence against him through the testimony of Officer Carrol Windham (testifying regarding the probation violations set forth in Agent Rogers's affidavit, including non-payment of restitution and court costs);[6] Officer Shirlean Anderson (testifying about Thomas's termination from the restitution center); and Mr. Jerald Parrish (testifying about Thomas's record and performance of his community service obligations). Thomas's counsel was given the opportunity to cross-examine these witnesses and declined

---

[6] Regarding Thomas's failure to pay his installments on the court costs and restitution, the circuit court also examined the printout from the circuit clerk's office showing no payments had been made and entered that record into evidence.

that opportunity.

¶30. Thomas was also given the opportunity to be heard, and did, in fact, testify at the hearing. Thomas testified that he had receipts and check stubs showing he had made some payments on his restitution and court-cost obligations, but did not have them with him. The circuit court told Thomas and his counsel that he would be happy to review any receipts Thomas had that showed he had made payments while in the restitution center and would modify his order if it changed anything. The circuit court also made clear he would need those receipts soon. As noted above, there is no indication in the record that any receipts or check stubs were timely provided to the circuit court. Thomas's counsel was given the opportunity to call witnesses or submit additional evidence on Thomas's behalf, and declined to do so. In short, the record plainly shows that the evidence against Thomas supporting his PRS violations was disclosed to him and condition (b) under *Gagnon* was met.

¶31. Thomas also asserts that condition (f) under *Gagnon* was not met, namely, the requirement that the circuit court provide him with "a written statement . . . [of] the evidence relied on and reasons for revoking [Thomas's PRS]." *Id.* at 786. Our review of the record, however, shows that this condition was fully met. The circuit court judge presiding over the hearing heard the evidence and argument of counsel, stated on the record the basis for his revocation ruling, and also detailed the basis for his determination in his September 12, 2016 revocation and modification order.

¶32. The Mississippi Supreme Court has made clear that "'merely asserting a constitutional-right violation is insufficient to overcome the procedural bars.'" *Fluker v.*

13

*State,* 170 So. 3d 471, 475 (¶11) (Miss. 2015) (quoting *Means v. State*, 43 So. 3d 438, 442 (¶12) (Miss. 2010)). Rather, "'[t]here must at least appear to be some basis for the truth of the [petitioner's] claim before the procedural bar will be waived.'" *Id*. Based upon our review of the record and the applicable law, we find Thomas's PRS was not unlawfully revoked because he was afforded the minimum due process requirements to which he was entitled at his revocation hearing. *See Morgan v. State*, 995 So. 2d 787, 790 (¶8) (Miss. Ct. App. 2008). Further, Thomas has failed to show any prejudice resulting from the lack of a preliminary hearing. Accordingly, we find that Thomas's assignment of error on due process grounds is without merit.

## II. Unsigned Acknowledgment to the Original Armed Robbery Sentencing Order

¶33. Thomas asserts that his original sentence for armed robbery was illegal because he did not sign the acknowledgment on page four of the June 6, 2008 sentencing order. From this Thomas argues that because that sentence was "illegal," the circuit court was not authorized to reinstate his suspended sentence in its September 12, 2016 revocation order. Thomas did not raise this point before the circuit court. He therefore waived this issue and may not raise it on appeal. *Fluker v. State*, 17 So. 3d 181, 183 (¶5) (Miss. Ct. App. 2009) ("[A] defendant who fails to raise an issue in his motion for post-conviction relief before the trial court may not raise that issue for the first time on appeal.").

¶34. Even if Thomas had raised this issue in his PCR motion, it relates to his original sentence for armed robbery. His judgment of conviction on that charge was entered June 6, 2008, and thus this issue would be time-barred under section 99-39-5(2) of the UPCCRA

14

unless an exception applies. We recognize that "errors affecting fundamental rights are excepted from the [UPCCRA's] procedural bars," *Rowland v. State*, 42 So. 3d 503, 507 (¶9) (Miss. 2010), including "the right to be free from an illegal sentence." *See Salter v. State*, 184 So. 3d 944, 950 (¶22) (Miss. Ct. App. 2015). As addressed above, however, Thomas cannot overcome the procedural time-bar by "merely asserting a constitutional-right violation." *Fluker*, 170 So. 3d at 475 (¶11); *see McCoy v. State*, 230 So. 3d 1090, 1094 (¶9) (Miss. Ct. App. 2017). Moreover, Thomas, as the movant, "bears the burden of providing authority and support for his assignments of error, and if he does not provide such support . . . , this Court is under no duty to consider the claim." *Simmons v. State*, 220 So. 3d 1010, 1013 (¶14) (Miss. Ct. App. 2017) (citing *Hoops v. State*, 681 So. 2d 521, 526 (Miss. 1996)).

¶35.    In this case, Thomas merely asserts that his failure to sign the acknowledgment on page four of the sentencing order constitutes an illegal sentence and that reinstatement of his suspended sentence under the original sentencing order was likewise illegal. Thomas provides no legal authority or any other basis in support of this proposition; nor does this assertion comport with the evidence contained in the record. Instead, the record indicates that with the assistance of counsel, Thomas completed a "Petition to Enter Plea of Guilty" as to the armed robbery charge against him, and he signed and acknowledged his plea petition before a notary. In his plea petition, Thomas acknowledged that he understood his constitutional rights as set out in that petition; he understood that he voluntarily waived those rights by entering a guilty plea; and he understood the possible sentence that could be imposed. Thomas also separately signed Exhibit 1 to his plea petition, which detailed the

15

court costs, restitution amounts, and community service fees he would be obligated to pay; and he also separately signed his Community Service Participation Order and Agreement, which details his community service obligations. This agreement clearly provides: "I, the undersigned defendant, certify I have read and that I agree to and understand, this ORDER AND AGREEMENT, which will be a part of my Sentence Order."

¶36. Additionally, the plea hearing transcript contained in the record indicates that Thomas was represented by counsel at his plea hearing; he took the stand at that hearing, and confirmed he could read and write and had an eleventh grade education. The circuit court also ascertained at the plea hearing that Thomas knowingly and voluntarily waived his constitutional rights as stated in his plea petition, and voluntarily and knowingly entered his guilty plea to the armed robbery charge. Though the sentencing order was not acknowledged by Thomas, his counsel signed the order and "agreed [to] and approved" its contents.

¶37. In short, Thomas provides no legal or evidentiary support beyond his own assertions for his argument that his failure to sign the acknowledgment of the June 6, 2008 sentencing order constitutes an illegal sentence. We therefore find no merit to this argument. Further, because we find that Thomas's original sentence was not "illegal," we find that there is no merit in Thomas's additional assertion that the circuit court erred in reinstating his original sentence in its September 12, 2016 revocation order.

### III. Sentencing Violation Under Section 47-7-37

¶38. Thomas asserts that under *Walker v. State*, 230 So. 3d 709, 715 (¶19) (Miss. Ct. App. 2016) (*Walker I*), the circuit court erred in reinstating his suspended sentence based upon its

16

treatment of each of the technical violations of his PRS conditions as three separate technical violations for purposes of imposing the guidelines of section 47-7-37(5). Section 47-7-37(5) provides, in relevant part, as follows:

> Within twenty-one (21) days of arrest and detention by warrant as herein provided, the court shall cause the probationer to be brought before it and may continue or revoke all or any part of the probation or the suspension of sentence. If the court revokes probation for a technical violation, the court shall impose a period of imprisonment to be served in either a technical violation center or a restitution center not to exceed ninety (90) days for the first technical violation and not to exceed one hundred twenty (120) days for the second technical violation. **For the third technical violation**, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one hundred eighty (180) days or **the court may impose the remainder of the suspended portion of the sentence**. For the fourth and any subsequent technical violation, the court may impose up to the remainder of the suspended portion of the sentence.

(Emphasis added). A "[t]echnical violation" is defined as "an act or omission by the probationer that violates a condition or conditions of probation placed on the probationer by the court or the probation officer." Miss. Code Ann. § 47-7-2(q) (Rev. 2015).

¶39. Thomas is correct that in applying the guidelines under section 47-7-37(5), we held in *Walker I* that Walker's first revocation order, based upon multiple technical violations, constituted Walker's first technical violation of his probation, and thus the Court held that Walker should not have been sentenced to more than ninety days in a technical violation or restitution center. *Walker I*, 230 So. 3d at 715 (¶19).

¶40. Thomas ignores, however, that not long after *Walker I* was decided, we again addressed how to interpret a "technical violation" in the context of section 47-7-37(5) in *Cobbert v. State*, 223 So. 3d 822 (Miss. Ct. App. 2017). In *Cobbert*, we determined that the

17

proper interpretation requires a finding of each separate PRS violation to be counted as a separate technical violation. *Id.* at 824-25 (¶¶6-7). We specifically acknowledged that "the conclusion in *Walker* [*I*] is contrary to the plain language of the statute and should be overruled." *Id.* at 826 (¶13).[7]

¶41. Thomas also ignores that on petition for writ of certiorari, the Mississippi Supreme Court reversed *Walker I*, in pertinent part, based on our decision in *Cobbert*. In *Walker v. State*, 230 So. 3d 703 (Miss. 2017) (*Walker II*), the Mississippi Supreme Court reversed the Court of Appeals, holding that the circuit court was authorized to impose the remainder of Walker's suspended sentence based upon its determination that Walker had committed three technical violations of his probation. *Id.* at 705-06 (¶¶10-13) (holding that section 47-7-37(5) "requires a finding of each separate violation of parole to be a separate and distinct technical violation").[8]

¶42. Based upon these authorities, we find no merit in Thomas's assignment of error on this point because it is based upon law that is no longer valid. The circuit court properly determined that Thomas violated three conditions of his PRS as set forth in the June 6, 2008 sentencing order, as follows: failure to make payments toward court costs and restitution as

---

[7] *Cobbert* was handed down June 27, 2017, before Thomas filed his opening appellant's brief on August 18, 2017, and five months before Thomas filed his supplemental appellant's brief on November 21, 2017, in which he again relied on *Walker I* in arguing that the circuit court improperly reinstated his suspended sentence based upon three technical violations.

[8] *Walker II* was handed down on September 21, 2017, a month before Thomas filed his supplemental appellant's brief on November 21, 2017, in which he relied upon *Walker I*.

18

required under condition (h); termination from the Pascagoula Restitution Center on August 26, 2016, in violation of condition (b); and failure to participate in community service and pay supervision fees as required under conditions (k) and (h), respectively. Accordingly, the circuit court correctly determined that Thomas had three technical violations and was authorized to reinstate Thomas's suspended sentence under section 47-7-37(5)(a).[9]

### IV. Two Points Raised Only in the "Summary of Argument" Section of Thomas's Appellant's Brief

¶43. In the "Summary of the Argument" portion of his appellant's brief, Thomas lists two points, as follows:

> III. The trial court erred when it did not consider that Thomas['s] right to effective assistance of counsel was not rendered by an attorney, and the performance was deficient to say the least.

> IV. The trial court erred in not seeing the dismissed charge and fine for Cause No. 207-269-KR2 [was] to be dismissed as part of the plea. See Exhibit (B) of sentence order. . . .[10]

---

[9] Before his September 9, 2016 revocation hearing, Thomas had, in fact, already been found to have committed two technical violations. This was determined by the circuit court in its July 28, 2016 order entered after Thomas's July 26 show-cause hearing on his PRS violations occurring between February 19, 2015 (when Thomas was released on PRS) and July 26, 2016. At that time he was found in violation of condition (h) due to his failure to make payments toward court costs and restitution, and condition (k) due to his failure to report for community service. Particularly in light of these two technical violations during that time period, the circuit court was well within its authority to revoke Thomas's PRS status and reinstate his suspended sentence in its September 12, 2016 revocation order. *See Cobbert*, 223 So. 3d at 826 (¶¶12-15) (reasoning that defendant had committed four separate violations of conditions of his PRS where it was established at defendant's first revocation hearing that he had committed three technical violations (including failure to report to his parole officer), and it was established at his second revocation hearing that he had once again failed to report to his parole officer, for a total of four violations).

[10] Thomas also notes in point IV that page four of the sentencing order was never signed. We addressed that issue separately above, as Thomas raised it in his supplemental

19

Thomas did not raise either of these issues in his PCR motion. Thomas therefore waived these issues and may not raise them on appeal. *Fluker*, 17 So. 3d at 183 (¶5). Additionally, Thomas bears the burden of proving these assertions. He fails to cite to any legal authorities or evidence in the record to support them. As such, we are under no duty to consider these issues. *See Simmons*, 220 So. 3d at 1013 (¶14).[11]

¶44. Even if we did consider them, both assertions fail on the merits. As to point III, to prove ineffective assistance of counsel, Thomas would need to show that "(1) his attorney's performance was deficient, and (2) this deficiency deprived him of a fair trial." *Vitela v. State*, 183 So. 3d 104, 107 (¶13) (Miss. Ct. App. 2015); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thomas has made no showing at all as to either factor.

¶45. Regarding point IV, Thomas asserts that the circuit court erred in failing to see that the fine (i.e., the $4,023.50 restitution payment to Veronica McCollum) associated with the felony-malicious-mischief charge under Cause No. 2007-269-KR2 was allegedly dismissed as part of his plea. A review of the record shows that this assertion is simply incorrect. Though the felony-malicious-mischief *charge* was dropped as part of his plea agreement, he was not relieved of his restitution obligations. Thomas's own plea petition, which he completed and signed, shows that Thomas was still obligated to make restitution in the amount of $4,023.50 to Veronica McCullum relating to this charge. Indeed, Thomas signed

---

memorandum of law filed November 21, 2017.

[11] Thomas's ineffective-counsel claim is also time-barred. Although it involves fundamental constitutional rights, it is not excepted from the three-year limitations provision of the UPCCRA. *See Jones v. State*, 174 So. 3d 902, 907 (¶12) (Miss. Ct. App. 2015).

20

the "Exhibit to Plea Petition" which specifically provides that "Defendant [Thomas] will pay restitution of $4023.50 to Veronica McCullum." Thomas was also present at his plea hearing where his counsel and counsel for the State confirmed that his aggravated assault and felony-malicious-mischief charges were to be dismissed, with the restitution relating to the felony-malicious-mischief charge *to be included* in Thomas's plea. Finally, Thomas's restitution obligations were clearly set out in the June 6, 2008 sentencing order, indicating that he owed 1st Avenue Curb Store $425.00 in restitution for the armed robbery, and that he owed Veronica McCullum $4,023.50 in restitution relating to Cause No. 2007-269-KR2 (the felony-malicious-mischief charge).

¶46. For the reasons addressed, we reject, on both procedural and substantive grounds, the two points that were raised by Thomas only in his "Summary of the Argument" section of his appellant's brief.

¶47. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**

21